SCANNED at MENARD and E-mailed
1/15/25 by JA  98 pages
Date        initials   No.

# UNITED STATES DISTRICT COURT

for the
Southern District of Illinois

Omar Ashanti Johnson )
_____ )
_____ )    Case Number: **25-58-SPM**
_____ )                   (Clerk's Office will provide)
_____ )
Plaintiff(s)/Petitioner(s) )
v.                       )  ☒ CIVIL RIGHTS COMPLAINT
                         )  pursuant to 42 U.S.C. §1983 (State Prisoner)
Zachary Hart, Zachary Powell, )  ☐ CIVIL RIGHTS COMPLAINT
Andrew Bennett, Garrett Leposky, )  pursuant to 28 U.S.C. §1331 (Federal Prisoner)
Sandy Walker, Anthony Wills )  ☒ CIVIL COMPLAINT
Lieutenant Hanks, John Doe Gang )  pursuant to the Federal Tort Claims Act, 28 U.S.C.
Member,  Defendant(s)/Respondent(s) )  §§1346, 2671-2680, or other law
Kevin Reichert

## I.  JURISDICTION

Plaintiff:  Omar Ashanti Johnson

A.    Plaintiff's mailing address, register number, and present place of
      confinement.  Menard Correctional Center
                    PO Box 1000
                    Menard, IL  62259
                    Reg. No. K74565

### Defendant #1:

B.    Defendant  Zachary Hart  _____ is employed as
                 (a)    (Name of First Defendant)

      a correctional officer  _____
                 (b)          (Position/Title)

      with  Menard Correctional Center, 711 KasKasKia
                 (c)          (Employer's Name and Address)

      Menard, IL 62259  _____

At the time the claim(s) alleged this complaint arose, was Defendant #1
employed by the state, local, or federal government?   ☒ Yes    ☐ No

If your answer is YES, briefly explain: He was an IDOC Correctional
officer

Rev. 10/3/19

1 of 31

**Defendant #2:**

C.   Defendant _Zachary Powell_ is employed as

(Name of Second Defendant)

_a  Correctional Officer_

(Position/Title)

with _Menard Correctional Center, 711 KasKasKia_

(Employer's Name and Address)

_Menard, IL   62259_

At the time the claim(s) alleged in this complaint arose, was Defendant #2 employed by the state, local, or federal government?   ☒ Yes   ☐ No

If you answer is YES, briefly explain:   he was an IDOC Correctional Officer.

**Additional Defendant(s) (if any):**   Defendant #3

D.   Using the outline set forth above, identify any additional Defendant(s).

Defendant _Andrew Bennett_ is employed as

a  Correctional Officer (Lt.)

with _Menard Correctional Center, 711 KasKaskia_

_Menard, IL   62259_

At the time the claims alleged in this complaint arose, Defendant #3 was employed by state government.

He was an IDOC Correctional Officer.

Rev. 10/3/19

2 of 31

Defendant #4:

E.   Defendant __Garrett Leposky__ is employed as

__a   Correctional Officer   (Srgt.)__

with __Menard Correctional Center, 711 KasKasKia,__

__Menard, IL   62259__

At the time the claims alleged in this complaint arose, was Defendant #4 employed by the state, local, or federal government?  ☒ yes

Explain: he was a Correctional Sergeant

Defendant #5:

F.   Defendant __Sandy Walker__ is employed as

__a Correctional Officer (Lt.)__

with __Menard Correctional Center, 711 KasKasKia__

__Menard, IL   62259__

At the time the claims alleged in this complaint arose, Defendant #5 was employed by the state government.          ☒ yes

Explain: she was a Correctional Lieutenant

Defendant #6:

G.   Defendant __Anthony Wills__ is employed as

__a  Warden     (CAO)__

with __Menard Correctional Center, 711 KasKasKia__

__Menard, IL   62259__

At the time the claims alleged in this complaint arose, was Defendant #6 employed by the state government    ☒ yes.

Explain: he was Warden of Menard C.C.

3 of ~~🖉~~ 31

Defendant #7:

H.    Defendant __Lieutenant Hanks__          is employed as
         a Correctional Officer (Lt.)
      with __Menard Correctional Center, 711 KasKasKia__
             __Menard, IL   62259__
      At the time the claims alleged in this complaint arose, was
      Dendant #7 employed by the state government?   ☒ yes
      Explain: he was a Correctional lieutenant

4 of ~~32~~ 31

II. Previous Lawsuits (Cont'd)

Parties to previous lawsuit:
Plaintiff: Omar Johnson Ashanti
Defendant:              Hulick
Court: SDIL
Docket number:
Name of Judge assigned to case:
Type of case:  Civil Rights (Conditions, 2nd hand smoke)
Disposition: Voluntarily dismissed (with prejudice)
Approximate date of filing lawsuit:
Approximate date of disposition:
The court told me I received a "strike"


Parties to previous lawsuit:
Plaintiff: Omar Ashanti Johnson
Defendant(s): Harner, Keim
Court: SDIL
Docket number:
Name of Judge assigned to case:
Type of case: Civil Rights (Religious Accomodations)
Disposition: Settled
Approximate date of filing lawsuit:
Approximate date of disposition:

5 of 31

Parties to previous lawsuit:
Plaintiff: Omar Ashanti Johnson
Defendants: Matthew Perry, Dylan "Kroger" Kling
Court:  CDIL
Name of Judge assigned to case: Michael M. Mihm
Type of case: 1983 Civil Rights
Approximate date of filing:  12/18/2023
Approximate date of disposition:  pending

## II.   PREVIOUS LAWSUITS

A.   Have you begun any other lawsuits in state or federal court while you were in prison or jail (during either your current or a previous time in prison or jail), e.g., civil actions brought under 42 U.S.C. § 1983 (state prisoner), 28 U.S.C. § 1331 (federal prisoner), 28 U.S.C. §§ 1346, 2671-2680, or other law?   ☒Yes ☐No

B.   If your answer to "A" is YES, describe each lawsuit in the space below. If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper using the same outline. **List ALL lawsuits in any jurisdiction and indicate the court where they were filed to the best of your ability**, including those that resulted in the assessment of a "strike" under 28 U.S.C. § 1915(g) and/or those that were dismissed for being frivolous, malicious, or for failure to state a claim (see 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2); Federal Rule of Civil Procedure 12(b)(6)). FAILURE TO FULLY DISCLOSE YOUR LITIGATION HISTORY, INCLUDING "STRIKES," MAY RESULT IN SANCTIONS THAT INCLUDE DISMISSAL OF THIS ACTION.

1.   Parties to previous lawsuits:
Plaintiff(s): Omar Johnson Ashanti

Defendant(s): Rashida Pollion

2.   Court (if federal court, name of the district; if state court, name of the county): SDIL

3.   Docket number:

4.   Name of Judge to whom case was assigned:

5.   Type of case (for example: Was it a habeas corpus or civil rights action?): Civil Rights (Medical Indifference)

6.   Disposition of case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Dismissed Summary Judgment; No appeal.

Rev. 10/3/19

7.    Approximate date of filing lawsuit:

8.    Approximate date of disposition:

9.    Was the case dismissed as being frivolous, malicious, or for failure to state a claim upon which relief may be granted and/or did the court tell you that you received a "strike?"    *No*

## III.    GRIEVANCE PROCEDURE

A.    Is there a prisoner grievance procedure in the institution? ☒ Yes    ☐ No

B.    Did you present the facts relating to your complaint in the prisoner grievance procedure?    ☒ Yes    ☐ No

C.    If your answer is YES,
   1.    What steps did you take?
   *I filed grievances to Counselor (IDOC), then to the Grievance Officer, then to Administrative Review Board / Chief Inspector (IDOC)*

   2.    What was the result?
   *~~DENIED~~ Some grievances were denied, one was recommended to be "resolved" (active and ongoing investigation by Internal Affairs into criminal allegations)*

D.    If your answer is NO, explain why not.

E.    If there is no prisoner grievance procedure in the institution, did you complain to prison authorities?    ☐ Yes    ☐ No

F.    If your answer is YES,
   1.    What steps did you take?

Rev. 10/3/19

8 of ~~82~~ 31

## IV.    STATEMENT OF CLAIM

A.    State here, as briefly as possible, when, where, how, and by whom you feel your constitutional rights were violated. Do not include legal arguments or citations. If you wish to present legal arguments or citations, file a separate memorandum of law. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. If your claims relate to prison disciplinary proceedings, attach copies of the disciplinary charges and any disciplinary hearing summary as exhibits. You should also attach any relevant, supporting documentation.

## Facts Constituting Claims

( Plaintiff here incorporates facts alleged in Exhibits A, B, C, D, et al, et seq     ).

The defendants in this case are all members of a correctional-officer / staff gang[1] that operates in Menard C.C. and beyond ( Hill C.C. , Western C.C. , Pinkneyville C.C. , et al. ). This gang engages in a system of unlawful, violent, retaliatory punishment and torture against individuals in custody ( especially individuals of Color ) who say or do things that any member of the gang doesn't like.

The regular weapons the gang uses include blows (fist, feet, etc.), chemicals ( pepper spray, fire extinguishers, etc.), food / water deprivation, torture cells[2], and false

---

[1] "gang" having the meaning ascribed to it in 740 ILCS 147/10, throughout complaint.

[2] "torture cell" means a housing cell designed or intended to confine an individual in staff's control in a manner to intentionally inflict severe pain or suffering (other than what is typical to incarceration), whether physical or mental, upon him for such purposes as punishment, intimidation, retaliation, or discrimination of any kind.

Rev. 10/3/19

9 of 31

    2.    What was the result?

G.    If your answer is NO, explain why not.

H.    Attach copies of your request for an administrative remedy and any response you received. If you cannot do so, explain why not:

10 of 31

torturously confine Plaintiff; Defendant Andrew Bennett also wrote a false-retaliatory disciplinary report upon Plaintiff in order to guarantee and prolong the torturous confinement of Plaintiff and to obstruct the prosecution of himself.

On May 23, 2024, Defendant Andrew Bennett stopped by torture cell N2-403 (Menard C.C.) and taunted Plaintiff, who was inside the cell enduring torture and suffering emotional and physical distress, which was Defendant Andrew Bennett's intent.

On December 26, 2024, Defendant Andrew Bennett stalked/harassed Plaintiff (see Exhibit E).

- <u>Zachary Hart</u> -

On May 22, 2024, Defendant Zachary Hart, a violent foot soldier and hit·man of the correctional-officer gang, without legal justification, and with the intent to interfere with the free exercise of Plaintiff's rights to free speech and medical privacy, agreed with Andrew Bennett/other correctional-officer gang members, to inflict physical (and mental) harm and the threat of physical harm upon Plaintiff.

In furtherance of their agreement, Defendant Hart sexually harassed and humiliated Plaintiff, shackled and cuffed Plaintiff, and took Plaintiff to a torture

12 of 31

cell (N2-825, Menard C.C.) where he battered Plaintiff with blows, a chemical weapon (pepper spray) and strangulation; he also wrote a false-retaliatory disciplinary report against Plaintiff in order to prevent the prosecution of himself.

On May 23, 2024, Zachary Hart intentionally deprived Plaintiff of dinner.

On May 31, 2024, Zachary Hart intentionally deprived Plaintiff of dinner and appeared at Plaintiff's cell location with about seven correctional officers, banged on and rattled the cell door, violently, in order to intimidate Plaintiff. They removed Plaintiff from the cell. Then Defendant Hart entered the cell and went through Plaintiff's property, found the complaint that Plaintiff was writing about Defendant Hart and read it, over Plaintiff's objection.

On June 7, 2024, Defendant Hart tampered with, or pretended (made it appear to Plaintiff) to tamper with Plaintiff's dinner, causing Plaintiff to avoid eating the food for fear it was ruined.

On June 25, 2024, Zachary Hart deprived Plaintiff of his allotment of ice, which Plaintiff needed and was required to receive for excessive-heat protocol/caution.

13 of 31

On July 23, 2024, Zachary Hart stopped by Plaintiff's cell location (E-511, Menard C.C.) and taunted Plaintiff, telling Plaintiff "I own you."

On August 29, 2024, Zachary Hart, while passing by Plaintiff's cell location (E-511, Menard C.C.), said to Plaintiff (who was inside the cell) "Snitches get stitches", Knowing that Plaintiff continued in pursuit of criminal charges against him (Hart).

On August 30, 2024, Zachary Hart threatened Plaintiff, saying "You want to get sprayed in the eye again?" because Plaintiff stood at the cell bars (front of cell) as a witness to Hart using a chemical weapon to batter a mentally ill man, who attempted suicide in the next cell — about five minutes after the man begged Hart to call a "Crisis Team" for him, telling Hart he felt like hanging himself[5].

On September 2, 2024, Defendant Hart delivered to Plaintiff a "Memorandum" (dated July 23, 2024) from

---

[5] Defendant Hart denied the man's initial request for assistance telling the mentally fragile mind to "go ahead and kill yourself."

the Warden of Menard C.C. (Defendant Mills), which the Warden wrote to Plaintiff in response to Plaintiff's complaint to the Governor's Office about Defendants' herein-described conduct. Defendant Hart gave Plaintiff the memorandum and stated to Plaintiff "You still trying to snitch on me. Won't work."

On November 21, 2024, Defendant Hart noticed Plaintiff as Plaintiff was being processed into the North 2 building (N2, Menard C.C.), and he approached the holding cell wherein Plaintiff sat and he threatened "You better hope you don't end up on my gallery."

- <u>Zachary Powell</u>-

On May 22, 2024, Defendant Zachary Powell, with the intent to interfere with Plaintiff's free exercise of the rights of free speech and medical privacy, and in support of his fellow gang members, agreed with Zachary Hart, Andrew Bennett/ other correctional-officer gang members to inflict physical harm and/or the threat of physical harm on Plaintiff.

In furtherance of this agreement, Zachary Powell helped Defendant Hart shackle and cuff Plaintiff and

took Plaintiff to torture cell (N2-825, Menard C.C.). Zachary Powell confiscated Plaintiff's asthma inhaler, leaving Plaintiff without an emergency rescue from asthma complications;

Defendant Powell then looked out for Defendant Hart while Hart battered Plaintiff inside torture cell N2-825; Defendant Powell also signed his name as a witness for Defendant Hart on Defendant Hart's false disciplinary report in order to aid and abet the prevention of Hart's prosecution for criminal acts committed against Plaintiff inside N2-825; Defendant Powell had a duty to intervene to stop Hart's crimes against ~~Plaintiff~~ Plaintiff, but at no time did he do so.

- Garrett Leposky -

    On May 22, 2024, Garrett Leposky, with the intent to interfere with Plaintiff's rights to free speech and medical privacy, agreed with Andrew Bennett, Zachary Hart, Zachary Powell, and other correctional-officer gang members to inflict physical (and/or mental) harm / the threat of physical harm upon Plaintiff.

    In furtherance of this agreement, Garrett Leposky ordered other gang members to take Plaintiff

16 of ~~30~~ 31

and confine Plaintiff in torture cell N2-825; Defendant Leposky authorized, consented to, or acquiesced in the aggravated battery of Plaintiff by defendant Zachary Hart; Leposky threatened to beat Plaintiff "near to death" if Plaintiff did not remain silent about the incident; he ordered that Plaintiff be placed in torture cell N2-403 (Menard C.C.) (a cell filled with urine-soaked linen and floor, feces, flies, gnats, and with no light or ventilation).

- <u>Sandy Walker</u> –

On May 28, 2024, with the intent to obstruct the prosecution of Andrew Bennett, Zachary Hart, Zachary Powell, Garrett Leposky and other correctional-officer gang members for their crimes against Plaintiff, Sandy Walker aided and abetted John Doe Internal Affairs (Menard C.C.) member(s) in the destruction/concealment of video evidence of the May 22, 2024 and May 23, 2024 incidents; She furnished false information in the disciplinary hearing summary report in order to suppress Plaintiff's account to her about the crimes committed against him by the gang members Bennett, Hart, Powell, and Leposky (Defendants all); She concealed the identity of

## IV.  STATEMENT OF CLAIM  (Cont'd)

disciplinary reports charging offenses punishable by confinement in Segregation[3] (usually 206 Intimidation or Threats, 215 Disobeying a Direct Order Essential to Safety and Security, 102b Assault, 601/102b Attempted Assault, and 105 Dangerous Disturbances). Nearly 100% (> 98%) of the members of the correctional-officer/staff gang are "White", while over 95% of the gang's victims are People of Color[4] (POC).

• <u>Andrew Bennett</u> -
    On May 22, 2024, Defendant Andrew Bennett, a ranking correctional-officer gang member, in response to Plaintiff's complaint to another officer (gang member) about that officer's interference with Plaintiff's medical examination, Knowing that Plaintiff violated no IDOC (or State/Federal) rule or law, and without lawful justification, detained/restrained Plaintiff and willfully delivered Plaintiff into the control of fellow correctional-officer gang members Zachary Hart, Zachary Powell, Garrett Leposky and others so that they might inflict physical (and mental) harm / the threat of physical harm upon Plaintiff and

---

[3] Confinement in Menard's segregation unit is torturous by its very nature because the size, conditions, and time "in-cell" (24/7).

[4] People of Color represent about 80% of the incarcerated general population.

11 of 31

witnesses of the May 22, 2024 and May 23, 2024 incidents; and without any evidence of his guilt, Knowingly found Plaintiff guilty of the false charges brought by Defendants Hart and Bennett and sanctioned Plaintiff to (59) days of torturous confinement in torture cell N2-425 (Menard C.C.).

- Anthony Wills -

Since before Plaintiff arrived at Menard C.C. (On December 28, 2023), Defendant Anthony Wills, the Warden of Menard C.C., has Knowingly authorized, condoned, consented, or acquiesced in a racially discriminatory system of punitive and retaliatory torture and violence against individuals of Color in custody in Menard C.C. (especially in Menard's Segregation unit and East Cell House) by a correctional-officer gang made up mostly of Local 1175 (AFSCME Council 31) members and other staff members. The gang's members are over 98% "White" individuals; Its victims are over 95% People of Color[6]. The gang adheres to a philosophy

---

[6] People of Color represent about 80% of Menard C.C.'s general population

that holds that People of Color should know their place and stay in it; that "place" being subservient/submissive to "white" people/political power.

On May 22, 2024, several of Defendant Wills' gang members (Defendants Bennett, Hart, Powell, Leposky, et al) commenced a violent conspiracy against the civil rights of Plaintiff, an African-American individual in custody who dared to exercise his right to freedom of speech.

On May 26, 2024, Plaintiff sent an emergency grievance to Defendant Wills, informing Wills about the crimes the gang committed against him (Plaintiff) on May 22, 2024, May 23, 2024. That grievance was ignored and discarded by Defendant.

On June 5, 2024, Plaintiff wrote and directed another emergency grievance to Defendant Wills on the same subject. That grievance was ignored and discarded by Defendant, also.

On June 31, 2024, Plaintiff sent a third emergency grievance to Defendant Wills about the violent conspiracy against Plaintiff's civil rights by the correctional-officer gang. Defendant Wills finally responded, deeming the grievance non-emergent, and taking no further action to protect Plaintiff or to reign in, or prevent, his gang's

criminal activities against Plaintiff or the scores of other victims of the gang's criminal and unlawful violence and torture.

On July 19, 2024, Plaintiff filed an emergency grievance to Defendant Wills about the false-retaliatory disciplinary reports written against Plaintiff by Defendants Bennett and Hart, about their violent conspiracy against Plaintiff's civil rights, and about Defendant Walker's obstructing justice and falsifying the public record. Defendant Wills deemed the grievance non-emergent and took no action to correct or stop those unlawful and criminal acts by his correctional-officer gang members against Plaintiff.

On or about July 25, 2024, the Governor of Illinois' Constituent Affairs Team (GOCAT) informed Defendant Wills about Plaintiff's complaint to the Governor's Office about the ongoing violent conspiracy against Plaintiff's civil rights by Defendant Wills' correctional-officer gang, about the gang's operation in Menard C.C., and about the torturous and inhuman confinement of individuals (especially of Color) in Menard's Segregation unit and East Cell House. Defendant Wills responded by sending a misleading response to the GOCAT and an insulting (to the intelligence) response to Plaintiff

20 of 31

in order to cover up for, and prevent the prosecution of the criminal correctional-officer gang that he authorizes, condones, and consents to.

On September 6, 2024, Plaintiff filed an emergency grievance against Defendant Wills, et al., for failure to protect Plaintiff from the stalking, harassment, and intimidation of Plaintiff by Defendant Zachary Hart. Defendant Wills bogusly answered the grievance filed against himself, deemed it emergent on September 9, 2024, but continued to allow gang member Defendant Hart to come in contact with Plaintiff, authorizing Hart's assignment to work in the housing units and on the specific galleries where Plaintiff is housed.

On October 4, 2024, Plaintiff sent Defendant Wills a notice, through certified mail, informing Wills that Plaintiff is still in danger and that Wills' responses to the GOCAT and Plaintiff were misleading, insufficient, and non-responsive to Plaintiff's concerns.

To this date (of the signing of this complaint), Defendant Wills has effectively done nothing to prevent the continuing criminal and unlawful acts of Defendants Hart, Bennett, Leposky, and other gang members against Plaintiff.

- <u>Kevin Reichert</u> -

Since before Plaintiff arrived at Menard C.C. (on December 28, 2023), Defendant Kevin Reichert, Assistant Warden of Menard C.C., has knowingly authorized, condoned, consented to, and acquiesced in a racially discriminatory system of punitive and retaliatory torture and violence against individuals of Color in custody in Menard C.C. (especially in Menard's Segregation unit and East Cell House) by a correctional-officer gang made up mostly of Local 1175 (AFSCME Council 31) members and other staff members. The gang's members are over 98% "White" individuals; Its victims are over 95% People of Color. The gang adheres to a philosophy that holds that People of Color should know their place and stay in it: that "place" being subservient / submissive to "White" people / "white" political power.

On August 9, 2024, Defendant Kevin Reichert was notified about the violent conspiracy against the Plaintiff's civil rights, ~~(XXXXXXXXXXXX)~~ about the false-retaliatory disciplinary reports, and about the obstruction of justice, all by correctional-officer gang members. ~~XXXXXX~~ (see Grv. # 0724-3254, Ex B ). Defendant Reichert took no corrective or preventive

action, he did not act reasonably to protect Plaintiff, nor did he authorize or order any investigation into the matter of Plaintiff's complaint. Instead, Defendant Reichert condoned, consented to, or acquiesced in the other defendants' criminal and unlawful activities against Plaintiff.

On September 22, 2024, Defendant Reichert was once again notified of the violent conspiracy against Plaintiff's civil rights by correctional-officer gang members (his co-defendants), and, once again, Defendant Reichert merely condoned, consented to, or acquiesced in their activities against Plaintiff.

On October 18, 2024, Defendant Reichert was informed that Defendant Hart (one of his gang's hit men/foot soldiers) was presently engaged in stalking, harassing, and intimidating Plaintiff. Again, Defendant Reichert took no action to prevent Hart's unlawful behavior or to protect Plaintiff from it. Instead, Defendant Reichert ignored/ignores or shows deliberate indifference to Plaintiff's health and safety concerns, he allowed/allows Defendant Hart (Correctional-officer gang member) to come into

contact with Plaintiff by allowing Defendant Hart to be assigned to work in the housing units, and on the galleries, where Plaintiff is housed.

- Lieutenant Hanks –
  On or about May 28, 2024, Defendant Sandy Walker notified Defendant Lieutenant Hanks (now former Internal Affairs, Menard C.C.) about Plaintiff's allegations that several criminal acts had been committed against him (Plaintiff) on May 22, 2024 and May 23, 2024.
  Instead of opening an actual investigation into the matter, Lieutenant Hanks took steps to cover up their crimes and to prevent Plaintiff from successfully prosecuting a case against the Defendants Bennett, Hart, Powell, Leposky, et al. Defendant Hanks concealed the video evidence of the May 22, 2024 and May 23, 2024 incidents.
  On May 30, 2024, Plaintiff sent (3) "Kites" (letters) to Lieutenant Hanks about the May 22, 2024 incident and the ongoing activities of the

24 of 31

criminal gang members (Defendants in this cause). Defendant Hanks responded by authorizing the confiscation and destruction of ~~some~~ Plaintiff's outgoing "legal-mail" (including an "Emergency Grievance" to Director Latoya Hughes (IDOC), a Complaint to Governor's Office, letters to Loevy & Loevy and McArthur Justice ~~Law~~ Center, etc); Defendant Hanks ignored Plaintiff's Kites to him for assistance; Defendant Hanks didn't authorize or order his "Internal affairs" team to interview Plaintiff concerning his allegations until forty days after May 22, 2024:

Despite the fact that he opened a rhetorical "investigation" into the plaintiff's allegations, Defendant Hanks worked to prevent or impede any actual investigation into the matter, to prevent the prosecution of his fellow gang members.

On November 21, 2024, I personally witnissed Defendant Hanks oversee the lych mob-style battery of an individual in custody in the strip search area of Menard's Segregation unit. Then it became clear to me that Hanks is not helping to pursue justice/accountability for the mis-conduct and criminal activities of his fellows:

25 of ~~22~~ 31

because Defendant Hanks is gang-gang, active and ranking correctional-officer gang member.

## Claims Against Defendants

- <u>Andrew Bennett</u>:
  I. Retaliation
  II. Conspiracy Against Rights   18 USC §241 Violation
  III. Deprivation of Rights Under Color of Law  18 USC §242 Violation
  IV. Torture
  V. Conspiracy Against Civil Rights  (state tort)
  VI. Unlawful Restraint        (state tort)
  VII. Intentional Infliction of Emotional Distress (state tort)
  VIII. Racial Discrimination
  IX. Obstructing Justice  (state tort)
  X. Correctional-Officer gang activity (state tort)

- <u>Zachary Hart</u>:
  I. Excessive Force
  II. Retaliation

Claims Against Defendants (cont'd)

III. Torture
IV. Conspiracy Against Rights  18 USC § 241
     Violation
V. Deprivation of Rights Under Color of Law
     18 USC § 242  Violation
VI. Conspiracy Against Civil Rights  (state tort)
VII. Aggravated Battery  (state tort)
VIII. Intentional Infliction of Emotional
      Distress  (state tort)
IX. Intimidation  (state tort)
X. Stalking  (state tort)
XI. Racial Discrimination
XII. Obstructing Justice  (state tort)
XIII. Correctional-Officer Gang Activity  (state tort)

• Zachary Powell:
    I. Conspiracy Against Rights  18 USC § 241
       Violation
    II. Retaliation
    III. Torture
    IV. Deprivation of Rights Under Color of Law
        18 USC § 242  Violation
    V. Conspiracy Against Civil Rights  (state tort)

27 of 31

VI. Intentional Infliction of Emotional Distress (State tort)
VII. Failure to intervene /protect (state tort)
VIII. Obstructing Justice (state tort)
IX. Correctional-Officer Gang Activity (state tort)
X. Racial Discrimination

- Garrett Leposky:
  I. Excessive Force
  II. Retaliation
  III. Torture
  IV. Conspiracy Against Rights 18 USC § 241 Violation
  V. Deprivation of Rights Under Color of Law 18 USC § 242 Violation
  VI. Conspiracy Against Civil Rights (state tort)
  VII. Intimidation (state tort)
  VIII. Intentional Infliction of Emotional Distress (state tort)
  IX. Obstructing Justice (state tort)
  X. Racial Discrimination
  XI. Correctional-Officer Gang Activity (state tort)

- <u>Sandy Walker</u>:
    - I. Due Process Denial
    - II. Obstructing Justice (state tort)
    - III. Failure to Intervene / Protect (state tort)
    - IV. Torture
    - V. Racial Discrimination
    - VI. Correctional-Officer Gang Activity (state tort)

- <u>Anthony Wills</u>:
    - I. Failure to Protect (state tort)
    - II. Racial Discrimination
    - III. Torture
    - IV. Obstructing Justice (state tort)
    - V. Cruel and Unusual Punishment
    - VI. Intentional Infliction of Emotional Distress (state tort)
    - VII. Correctional-Officer Gang Activity (state tort)

29 of 31

- Kevin Reichert:
  - I. Failure to Protect (state tort)
  - II. Racial Discrimination
  - III. Torture
  - IV. Obstructing Justice (state tort)
  - V. Cruel and Unusual Punishment
  - VI. Intentional Infliction of Emotional Distress (state tort)
  - VII. Correctional-Officer Gang Activity (state tort)

- Lieutenant Hanks:
  - I. Failure to Protect (state tort)
  - II. Obstructing Justice (state tort)
  - III. Racial Discrimination
  - IV. Torture
  - V. Correctional-Officer Gang Activity (state tort)

30 of 31

V.    **REQUEST FOR RELIEF**

State exactly what you want this court to do for you.  If you are a state or federal prisoner and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records, or parole), you must file your claim on a habeas corpus form, pursuant to 28 U.S.C. §§ 2241, 2254, or 2255.  Copies of these forms are available from the clerk's office.

- Injunctive Relief: Stop housing individuals in torturous Segregation and East Cell House
- Compensatory, Punitive, and Nominal damages
- Emergency transfer out of Menard C.C.
- Expungement of false-retaliatory tickets

VI.    **JURY DEMAND** (*check one box below*)

The plaintiff ☐ does ☒ does not request a trial by jury.


**DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11**

I certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11 may result in sanctions.


Signed    1/14/25
on:        (date)

711 Kaskaskia Street
Street Address

Menard, IL  62259
City, State, Zip

Signature of Plaintiff

Omar Ashanti Johnson
Printed Name

K74565
Prisoner Register Number


_____
Signature of Attorney (if any)

Rev. 10/3/19

31 of 31

3/32

RECEIVED

SEP 19 2024

ADMINISTRATIVE
REVIEW BOARD

The two lieutenants took me upstairs and into the area where Seg "intakes" are medically examined / strip-searched, they sequestered me in the examination room in the far corner and ordered me to sit on the metal stool inside. I complied. Lieutenant **Andrew Bennett** then ordered a nearby officer to chain me to the stool and place leg-irons on me. The officer complied then left me in the room alone.

Moments later, "CO" **Zachary Hart** came into the examination room, unchained me from the metal stool, and took me, handcuffed behind my back and shackled, and put me inside the strip-search bullpen, which is located in the same general area. He came inside, too.

 "So you're the asshole." **Hart** said to me.

 "'Asshole'? You don't even know me."

 "You were just in the HCU, right?"

 "Yeah, but you don't know what happened over there. You weren't there."

 "You were being an ass. Kneel down." **Hart** indicated that he wanted to remove the shackles from my ankles. I knelt down on the floor. He

4/32

told me to stand up and place one knee at a time on the bench along the wall inside the bullpen. I complied, and he removed the shackles from my ankles one-at-a-time.

Hart then stepped outside of the bullpen and locked me inside, and he ordered me to back-up to the bars so he could remove the handcuffs from my wrists. I complied.

   "Get naked." Hart spoke to me in a sharp and chopped manner, with a heartless tone. His eyes were cold, displaying no desire for commerce of feelings between he and I, no exchange of human sentiment, only palpable hostility. His dimeanor alarmed me, but I found some comfort in the silver lining: the lieutenants who had initially restrained me and brought me to the Segregation building were gone, and I hadn't been physically beaten or roughed up. I had apparently escaped the worst of possibilities. Not the category 5 I had feared. But what I hadn't realized is that, as I stood slave-stocks naked before the gazing Zachary Hart, I was in the eye of the storm.

I removed my Kuffi last and held it in my hands as I looked for a clean and dignified

RECEIVED

SEP 19 2024

ADMINISTRATIVE
REVIEW BOARD

5/32

(relative to the floor) spot to hang it on the bars of the bullpen.

"Give me your hat." Hart said. By "hat" he meant my Kuffi. I handed it to him.

"I want to keep that and wear it while I'm in Seg" I said

"It goes in your property." Hart indicated that my Kuffi would be confiscated and placed in my property until I was released from Segregation. That's contrary to IDOC policy, which allows individuals in custody to keep and wear our religious headwear.

"I'm allowed to wear that in Seg." I said.

"It goes in your property." Hart snapped his retort and tossed my Kuffi on top of the pile of my clothes down by his feet. Then he gave the strip-search orders.

"Open your mouth. Top lip. Bottom lip. Tongue. Hands. Ears. Lift your dick. Separate the nuts. Turn around. Right foot. Left foot. Bend over and spred your cheeks."

That's usually where a strip-search ends. So I turned around ready to get dressed.

"No. I didn't tell you to turn around.

6/32

So turn back around, bend over and spred 'em again."
I have performed innumerable strip-searches in my 26 years of incarceration, so I know how to perform every order correctly. Never before had I ever been asked to repeat the final move. I felt like Hart was doing too much, attempting to humiliate me. But I wanted to get dressed, so I turned back around, bent over, and spred my buttocks apart again. Again, I stood up straight when I was done.
"Not good enough. I want more enthusiasm."
Hart was obviously harassing me. I turned my head around to look at his face, to see if he were serious. Still that same cold gaze.
"Do it right or we'll be all night." he said. I squatted and spred my buttocks again.
"Right there. Hold it 'til I say."
After about five seconds, I stood straight up and turned around with my hands covering my genitils. He hadn't told me I may, but I was done being humiliated. He handed me my underwear to put on, and he asked me what size jumpsuit I wear. I told him

RECEIVED

SEP 1 9 2024

ADMINISTRATIVE
REVIEW BOARD

7/32

that I wear a "1X". He went away and returned with a 3X.

As I got dressed in the Segregation tan jumpsuit, Hart picked up my pile of clothing, including my kuffi, from the floor and carried it toward the office in the area.

"I want to keep my kuffi" I was ready to have that battle now.

"It's going in your property." Hart said. I saw the Segregation lieutenant inside the office, so I yelled to him,

"Lieutenant, will you tell him I can keep the kuffi."

The lieutenant told him I am permitted to keep the kuffi.

Apparently angered by my call to the lieutenant and the lieutenant's confirmation of my right to keep my religious headwear, Zachary Hart, while standing at the entrance to the office, turned toward the bullpen where I dressed myself, and forcefully threw my kuffi the distance from the the office to the floor at the front of the bullpen (about 20 feet).

8/32

Immediately, the Lieutenant reproved him.
    "What are you doing?" the lieutenant asked Hart.
    "I'm sorry." Hart said to me coldly and insincerely. I was rattled by his blatant disrespect for my faith.
    "'I'm sorry'?" I echoed in interrogative disbelief. Hart walked up to the front of the bullpen, close to me, and said in lowered voice,
    "I said 'I'm sorry'. I don't apologize. You're going to my gallery, my name's Hart, so put it behind you."
I was pretty certain I had just been threatened, but I was also too upset to care.
    "Why would you do something like that, though?" I searched him for any sign of decency or civility.
    "Like I said, 'you're going to my gallery. Put it behind you.'"
Hart held handcuffs in his hand. He indicated with a hand gesture for me to turn around to be cuffed behind my back. I dusted off my Kuffi, placed it on my head, and complied. Cuffs on.

RECEIVED   9/32

SEP 19 2024

ADMINISTRATIVE
REVIEW BOARD

Suddenly, "CO" Zachary Powell entered the area, and the two Zacharies entered the bullpen with me. Hart ordered me to repeat the process of kneeling on the bench as he reapplied the shackles.

Sexually humiliated, religiously disrespected, shackled and handcuffed behind my back, I was on my way to Hart's gallery.

"Let's go." Hart grabbed the lead[1] on the cuffs. I walked out of the bullpen with Hart behind me and Powell behind him.

They led me from the strip-search/examination area, upstairs to 8 gallery. I turned left onto the gallery.

"You're going in 825." Hart informed me.

Cell 825 is about half-way down 8 gallery. I walked forward down the gallery to the sound of caged men shouting "on the new" and pass the eyes of men curious to see who was "On the new." I heard someone say "Omar. That's

---

[1] Segregation handcuffs are designed with a "security lead" (handle) attached so the officer may control an individual's movements.

Omar." Someone else said "Dude was in Galesburg with me." There was other general discussion and comments about who I was. I looked ahead and noticed cell **825**'s door was locked open, prepared for my arrival.

When my escorts and I got down by the 820s, the curious onlookers in those cells became news bearers.

"That cell's fucked up" several guys said
"The water doesn't work in there." some said.
"Shut up! I fixed the water today." **Hart** said.

**Hart** had earned my distrust, so I worried that I was about to be placed in a cell with no working water. My kidneys already ached from going the preceding two weeks without water when I was housed in the NRC[2]. So whether there was water available in cell **825** was no trivial matter to me. I decided that I would check the water as soon as they put me in the cell.

---

[2] Stateville/NRC water is declared unsafe for consumption.

RECEIVED    11/32

SEP 1 9 2024

ADMINISTRATIVE
REVIEW BOARD

Usually, when an officer places a handcuffed individual in a cell, the officer closes the door behind the individual, and then the individual backs up to the door and allows the officer to remove the cuffs. My plan was that when the officer put me in the cell, I would go check the water situation while he closed the door, before removing the cuffs. If the water didn't work, I would peacefully request to be placed in another cell. If Hart refused that request, I would peacefully request that he call a higher authority in order to resolve the situation. Unfortunately for me, just about every ironic proverb about the best made plans applied here.

Hart released me into cell 825. I immediately walked, shackled and cuffed, to the sink on the back wall of the cell, twisted and turned my body so that I could press the buttons with my hands cuffed behind my back, pressed the buttons, and nothing came out. The water didn't work. The individuals in custody had given me fair warnings. Zachary Hart had lied.

12/32

I looked back toward the cell door and saw that it wasn't closed; that Hart was standing there just outside the entrance, with a peeved look on his face.

I walked back to the doorway, and I stood about 2 feet (or less) inside the entrance, facing Hart. Powell stood behind Hart. Both of them faced me.

"The water doesn't work." I said to Hart. I figured he already knew the water wasn't working, and I suspected that, that look on his face was evidence of his anger at me for exposing his lie, spoiling his trick.

"You want the leg-irons off?" Hart asked in a facetious tone.

"Yeah, but this water doesn't work." I said. Hart drew his pepper spray from his right hip.

"Take the leg irons off!" Hart ordered At that point I was done talking / thinking about water. I had never been pepper sprayed before, and I had no desire to know what it feels like. But his order "Take the leg-irons off" was ~~awkward~~. awkward. I wasn't sure how he want me to position. I looked down at my feet and lifted my right foot

13/32

off the floor for him, so he could remove the shackle from it. **Hart** didn't budge. Confused, I looked up and asked him, "What do you want me to do?"

(BLAST!). **Hart** sprayed me directly in my right eye with a heavy stream of pepper spray. (BOOM!) In a second or less — the amount of time it took for me to turn my head and eye away from the blast of spray — **Hart** rammed me like a safety hitting a defenseless ~~Receiver~~ Receiver. I immediately lost balance. Handcuffed behind my back and shackled, I couldn't catch myself. I fell leftward and landed left side down with my upper torso wedged between the left wall and the right side of the toilet, a space of about 9 inches. The side of the toilet crushed into my ribs and chest (injuring my ribs).[3]
I was stuck. **Hart** ran to the back of the cell and pressed my upper body deeper into the wedged position, placed his weight on me, and

---

[3]  This is a blueprint showing where and how my body was wedged. Not to scale. The space between the bunk and the wall where I lay is less than 3ft; between the toilet and the wall less than 10 inches.

RECEIVED

SEP 19 2024

ADMINISTRATIVE
REVIEW BOARD

14/32

sprayed me in my face several more times.
    "Didn't I say the sink was fixed." he growled.
Then he punched me on the right side (exposed
side) of my face several times.
I struggled to breathe because my chest was
crushed by the toilet, let alone Hart's body weight
pressing on my right side and the pepper spray's
effect on me. I was suffocating.
Suddenly I felt Hart's hand grip my throat. He
choked me. I shook my neck, vigorously. He
removed his hand from my neck.
    "Help!" "Help!" I yelled, thinking Hart was
going to kill me — even if that wasn't his intent.
    "I can't breathe! I can't breathe!" I
pleaded. I heard other individuals in custody
yelling for me. Yelling at the officers in the
cell with me "Get off him!" They banged on
the bars of their cells.
    "Get off me!" I begged "You're gone
    kill me." "I got asthma."
Then Powell pulled on Hart's shoulder, and Hart
got off of me for a few seconds. Suddenly,
Hart climbed back on me, with less weight this
time, kneeling on my waist and upper legs.

15/32

"Get off me!" I said, again.
"Not until the Sergeant comes." Hart said
I prayed the Sergeant would hurry up and
arrive. I felt I would suffocate.
Suddenly Hart got off of me and exited the cell.
I squirmed and wiggled my lower body until I
dislodged my upper torso from between the wall
and toilet. That took about 10 seconds.
My right eye burned like nothing I've ever felt,
and it was completely blinded. It felt like a
pool of pepper spray sat in my lower right eyelid.
My whole face and neck burned, and the right
side of my face pounded in pain. Being freed
from between the wall and toilet, I could
breathe better, but not well, and my chest and
left ribs ached like I had been beaten with
baseball bats, making it painful when I inhaled.
Both of my hands were completely numb, and
my wrist bones ached like they were broken:
My fall to the floor (from Hart's hit) had
forced the handcuffs to slip from the joints
of my wrists over both of my wrist bones
where the cuffs tightened on my forearms,
cutting off circulation to my hands.

RECEIVED    16/32

SEP 1 9 2024

ADMINISTRATIVE
REVIEW BOARD

An officer grabbed the security lead on the cuffs (behind my back) and my right arm and helped me stand up. There were a couple more officers outside of cell **825**. The officer holding the lead led me out of cell **825** and up toward the front of 8 gallery. I was in bad condition.

"They fucked him up." an onlooker said.

"They tried to trick him." another said. I was afraid that the most violent part of the storm was yet to come. I felt compelled to protect myself the best way I knew how.

"My name is Omar Johnson. They're beating me for no reason" I yelled. Again,

"My name is Omar Johnson. I don't know where they're taking me." I yelled and announced my name all the way off the gallery. Some of the onlookers (witnesses) repeated my name. Several of them responded "We know who you are, Omar", "We know you, Omar." Their responses encouraged me some. I thought someone might be able to get word out that Omar Johnson was in danger; that I had been

17/32

led off by a mob of COs; that, if I failed to survive, someone would know the name of the person who had been killed. Mainly, I hoped, by ringing my vocal alarm, the COs would be discouraged from perpetrating any further violence against me.

The officers led me back into the strip-search/ examination area and placed me inside the strip-search bullpen on the bench along the front bars. I could hardly sit upright. My body and face ached and burned. There were about 10 officers in the area; they all seemed focused on my situation.
As soon as I was seated, someone yelled "Hey!", snatching my attention. I looked through my barely opened left eye and saw someone approach- ing me hard from my left.
     "Do you know where the fuck you are?" I later learned this was "Sergeant" **Garrett Leposky**. He entered the bullpen and stood over me on my left side. He was in attack posture.
     "Look at me!" **Leposky** barked at me.
     "I can't see." I said.
     "Hold your fuckin' head up, open your eyes, and look at me!" **Leposky** growled.

RECEIVED    18/32

SEP 1 9 2024

ADMINISTRATIVE
REVIEW BOARD

I lifted my head and opened my left eye as well as I could. Certainly, I didn't want to suffer anymore violence, but I didn't open my eye and look at him for only that reason. Mainly, I knew I needed to see this person's face and perhaps a name on his shirt. I wanted to be able to identify him later if I survived the event.

"Do you know where the fuck you are?" Leposky seemed to think I was new to Menard C.C. and unfamiliar with its violent culture and longstanding history of staff lynch mobs that brutalize individuals in custody. But I know Menard. I spent 19 consecutive years here before transfering to Hill C.C. where I spent the six years before returning to Menard in late December 2023 (12-28-23). I realized when I returned that I don't know most of the staff here now, and they don't know me.

"Menard." I answered, painfully.

I noticed his face. No name on his shirt. His fist formed on his right hand. I thought, survive.

"That's right motherfucker, and you better act like it. I will beat you near to death, and nobody you cry to can help you.

19/32

"I've been doing this for a long time and I've never been caught because I'm good at it. Now you're going to keep your mouth closed about this and go in the cell or you will be beat. You understand?"

"Yes, sir." I sacrificed some dignity for health.

"Or, I can take these cuffs off you, and you can try your luck." Leposky offered.

I took that last offer as rhetorical or a temptation to get myself brutally beaten by the whole mob. I was sure neither of those cowards would grant me an honorable and fair opportunity to defend myself. So I remained silent, in pain, on fire, laboring to breathe, with mucus streaming out of my nose, tears flowing out my eyes.

Leposky left the bullpen and went into the area office, joining the lieutenant who had reproved Hart for throwing my Kuffi on the floor. The other officers dispersed, too. Most of them left the area. A few of them went into the office. I burned with no relief.

"Why was he even brought to Seg for insolence?" I overheard the lieutenant inside the office ask that

RECEIVED

SEP 1 9 2024

ADMINISTRATIVE
REVIEW BOARD

20/32

question to someone in the office with him.
I got his point: why was I brought to Seg
for a "minor offense"; "insolence" doesn't carry
Seg time.   I wondered, the same thing when
**Andrew Bennett**, the lieutenant who brought me
to Seg, told me he was charging me with
insolence.  Why was he taking me to Seg?
Hearing the lieutenant in the office (the N2 lieutenant)
raise that question did more than merely inspire
my agreement.  More importantly, it inspired my
alarm because I knew the insolence charge
would have to be changed to a major offense
in order for Bennett to justify my presence
in the Segregation building.  I anticipated
a cover up by "pen whipping"[4].

About twenty minutes later, a group of officers
entered the bull pen where I sat battered,
bruised, and burning from chemicals.  One of them
ordered me to stand up.  I complied.  He grabbed
the security lead on the cuffs and said, "Let's go."

---

[4] "pen-whipping": a staff member's intentional falsification of
charges/information in a disciplinary report, usually done in order
to cause or increase punishment for an individual in custody.

I walked out of the bull pen, and the group of three or four officers led me to N2 4 gallery, cell 403.

When we arrived at the cell, the lead officer ordered me to kneel on the gallery in front of the cell so he could remove the shackles. I complied.

While on my knees, I noticed N2 403 was open. I saw it was dark inside. It had a solid metal door instead of bars. I knew then my time in Segregation would be torturous, but my mind was mainly on my burning eyes and face. I wanted to get off my knees ASAP and into any cell with a functioning sink, so I could wash the pepper spray out of my eyes, off of my face, neck, shoulders and upper chest; so I could check on my beat-up body; so I could get the cuffs removed from my forearms and regain blood circulation to my hands.

"Alright." The lead officer indicated for me to stand to my feet. I complied, with his assistance. At his direction, I then stepped into cell 403, and the officer released the lead and closed the door behind me.

RECEIVED

SEP 1 9 2024

ADMINISTRATIVE
REVIEW BOARD

22/32

Immediately, I felt like all the breath and coolness was vacuumed out of my body. Inside 403 felt like a sauna, smelled like a filthy porta-potty. The heat and humidity was suffocating me, exacerbating the breathing difficulties I already had due to pepper spray and injured ribs, the burning sensation on my face. I needed water, badly.

I reach'd my hands back toward the closed door and allowed the officer to reach in through the "chuck hole" and remove the cuffs. He did, and he closed the chuck hole.

Water. I needed water.

It was so dark in 403 that I couldn't see my way around. Thanks to my familiarity with Menard C.C. cell lay outs, I found my way to the sink in the back of the cell. I knew the lights switches are located above the sinks. I found the switch. Pushed it up. No light. Lights didn't work. I felt around the sink and located the cold-water button. I pressed it. Water. I placed my right eye directly in the stream, rinsed it. Then my whole face. My right eye, again.

23/32

I repeated that process several times. The burning wouldn't stop. I struggled to breathe. There were puddles all over the floor around the sink and the toilet, which is next to the sink.

Other individuals in custody called out to me, asking "who is that over there?" "Who just got put in 403?" I told them my name, and explained that I would talk to them when I finished rinsing my eyes and face. They understood that.

The air inside 403 was still and thick with stench. Moist, rusted metal. Mildew. Feces. It was an awful mixture, but the smell of urine like ammonia dominated. I covered my nose with my tee-shirt, but after a few seconds my nose and mouth burned: the shirt had pepper spray on it. I couldn't see it. It was really hard to breathe.

I felt the bunk. It was rusty and damp. It had a mattress folded on it. I unfolded the mattress and noticed it was damp. I smelled (sniffed) it. It was saturated with urine. It was a plastic mattress stuffed

RECEIVED

SEP 1 9 2024

ADMINISTRATIVE
REVIEW BOARD

24/32

with cloth; tears in the mattress had allowed the cloth on the inside to soak up urine, which, I later learned, was that dampness on the rusty bunk.

I remember the intense feeling of hopelessness that waved through me from the thought that I would not survive long, perhaps not the night, in that suffocating stench and heat. Panic arose in my mind. I knew I must check the panic before it triggered an asthma attack; and **Zachary Powell** had taken my rescue inhaler, so a asthma attack could be fatal, especially in the throes of intentional torture where I could expect no medical attention. So I gathered myself, and I practiced meditation in order to get free from my mind's control.

I made my way back to the door, and I introduced myself to the guys who were curious about my identity. One of them knew me. The others screened me about where I'm from, who I know, why I was in Seg, etc. It was difficult communication: the door is sealed so tightly I had to yell my words to them, which my injured ribs

RECEIVED

SEP 1 9 2024

ADMINISTRATIVE
REVIEW BOARD

25/32

made painfully challenging. But I kept talking to them. They comforted me. When I told the men around me how I had been treated — disrespected, abused and battered by the gang of officers, they shared shared their sympathies and empathies. Several expressed their anger and encouraged retaliatory violence against staff[5]. Others shared their knowledge of similar acts of violence by staff gangs. One guy, my neighbor in **402**, an individual surnamed **Briton**, shared with me how he came to be in **N2 402**. He had also been assaulted, even sexually (having his genitalia intentionally sprayed with pepper spray), battered by a gang of officers. During his lynching, several officers pepper sprayed him for sport, in multiple off-camera locations, including the Seg **strip-search bull pen**, where **Zachary Hart** disrespected my religion and sexually humiliated me. All of this happened to **Briton** on the **3-11 shift**, the

---

[5] I rebuffed this kind of talk. Yes, I'm for defending myself against whoever, but, for me, retaliatory violence unnecessary for self-defense is not on the table.

same shift on which I was victimized. To my ears, **Briton** got it worse than I, but my injured ribs (which are still tender) disagreed. I removed my jumpsuit, stretched it out on the floor along the door and the front wall, and laid my body on top of it to rest. The burning in my eyes and on my face was ameliorated but not alleviated, which seem'd less important to me at that point because my whole being was in hell: **N2 403**.

That night I fell asleep right there on the floor by the door, laboring to breathe, nursing my ribs, and listening to my neighbors rap and discuss their lives. Whenever I could sleep, I fell asleep on the floor by the door. That was about the only dry space on the floor. Plus, lying down there, I could breathe a little non-toxic air through the quarter-inch space between the bottom of the door and the floor. No, it wasn't comfortable at all, but it was all I had of space unclaimed by human waste in **N2 403**: on the floor by the door.

RECEIVED    27/32

SEP 1 9 2024

ADMINISTRATIVE
REVIEW BOARD

I awoke to the reality that I am **a victim of torture**, living in a torture cell. Not enough light to observe my surroundings; not enough light to read or write; not enough light to see my food or the flies and gnats that I felt landing on me every few seconds. I heard the pests buzzing my ears all day and night. I imagined them moonlighting on urine puddles and feces smears and then coming to light on me. The stench and the flies stole my appetite. I couldn't eat in there. The smell. The thought of nasty flies and gnats landing on my food in the darkness while I ate, unable to see them or my food, was way too much for my psychological stomach to overcome despite my hunger. So I was forced to fast. In the darkness, I heard flies like pebbles hitting on the styrofoam food trays. They were vicious, aggressive, all day and night for four days.

Officers avoided **N2 403** as if it were plagued; I suffered torment inside **N2 403** knowing it was. What was I breathing in there? What biohazards surrounded me? No officer

stopped for me when I yelled for their attention. I needed medical attention. I needed soap, toothpaste, toothbrush, tissue, etc. I had none of it.[6]

On May 23, 2024, 3-11 shift, Andrew Bennett stopped by N2 403 between 4-4:45pm and taunted me, asking "How do you like your cell?" I asked him if he would get me moved out of there, explaining how it was killing me. He said, facetiously, "Probly not." and walked away.

Around 5-6:30pm the same night, "CO" Faulkenberry (spell √) refused to give me my dinner. When I asked him why he skipped cell 403, he said "A certain officer wants to give you your tray." He was loud enough that several people heard him, and men in the area protested his action, called him out on denying me my food (the man in 402 was

---

[6] On the second day a fellow individual in custody, a man housed in N2 401, gave me soap, toothpaste, paper and pens. Staff never gave me any basic hygiene/sanitation needs.

29/32

especially outspoken on my behalf, 402, 404, and several other cells on the fronts of 4 gallery and 2 gallery joined in). Faulkenberry told them to "mind your business." I never got dinner that night. While it's true that the flies, gnats, and stench had forced me to fast, the officers didn't know that, so I was entitled to my dinner. It was denied me. Moments later, Zachary Hart joined Faulkenberry on 4 gallery and helped him pass out trays to the other individuals. I suspected Hart was the "certain officer" who put the hit on my dinner, and just like that Faulkenberry had joined the conspiracy against my civil rights and correctional officer gang-related activity.

On May 25, 2024, my third day in torture cell 403, I labored to breathe and sensed an asthma attack coming on. I alerted my neighbors to call for medical attention for me. They banged on their doors and bars and yelled, making the noise of a freight train with sirens saying "Need a med-tech on 4

RECEIVED    30/32

SEP 1 9 2024

ADMINISTRATIVE
REVIEW BOARD

gallery!" A few seconds later, "CO" Chandler came to my door with another officer. I explained that I have asthma and I was in the beginning of an asthma attack with no inhaler. The officers left my cell urgently as if to go get medical assistance. About five minutes later, I'm on my knees by the door full on laboring for breath, "CO" Chandler returned to the door and said, "I'm going to try to fix that light in there for you, okay?" There I was, literally fighting to stay alive, and the solution of the staff was to try to fix that light? Unbelievable. While they were in the utility tunnel behind 403 tinkering with the light, I gathered and calmed myself. On my knees as in prayer by the door, I fought off asthma for over an hour. They couldn't fix the light. A little while later, Chandler[7] came back to

---

[7] CO Chandler seemed hamstrung from really helping me the way I needed, but he did do enough good to convince me he did not support what I was suffering from staff.

RECEIVED

SEP 1 9 2024

ADMINISTRATIVE
REVIEW BOARD

31/32

the door of **N2 403** and promised me he
would try to get me out of that cell.
The next day, **May 26, 2024**, he did.
I was moved to N2-425, a cleaner cell
with light. No mattress and bedroll,[8] that
night I slept on the steel bunk which
I covered with the tops of styrofoam trays
for a little comfort.   The next day, **Chandler**
gave me a mattress.

I'm out of **N2 403** now, and my body is
mostly healed up (ribs still tender), but I'm
still being tortured.   Yes, the actors have
mostly left me alone now, besides denying me
a shower or some other basic need here-and-
there, and I'm in N2 425 now; not 403. But
**N2 425** is not fit for human habitation.
Behind this solid metal door, I exist

---

[8] **Chandler** forgot to bring me a mattress before he went home.
I asked "CO" **Kitchens**, the 3-11 shift officer that night,
for a mattress and bedroll, he said "No" and told the
officer who accompanied him that I have "nothing
coming", explaining I was "the one" from the **Hart** incident.

24/7 for over 27 days now, inside of a 4½ x 10½ ft cave called a cell, with 2½ x 9 ft of maneuverable space, in daily temperatures of +100° and no air circulating inside the cell[9] as a consequence of a lynch mob of correctional officers' attempt to cover up their crimes against me, one victim of anti-state felonious violence.

* In furtherance of their attempts to cover up their crimes against me, both **Andrew Bennett** and **Zachary Hart** wrote false disciplinary reports against me, thereby **tampering with the public record and obstructing justice** / in furtherance of gang-related activities.

Pursuant to 735 ILCS 5/1-109, I declare, under penalty of perjury, that I am the author of this document, and that the information contained therein is true and correct to the best of my knowledge. *Omar Ashanti Johnson*, 6-18-24
Omar Ashanti Johnson

[9] It takes over 24 hrs for my handwashed laundry to hang dry in 425. A smoke test in the negative pressure vent (in the back of the cell) proves no air exits the cell through that vent.

Moved East 5-11

**Illinois Department of Corrections**
**Individual in Custody Grievance**

Pilot Program Only

| Date: 6-18-24 | Individual (please print): Omar Ashanti Johnson | ID #: K74565 | Race (optional): Human |

Current Facility: Menard
Facility where grievance issue occurred: Menard

Nature of Grievance:
- ☐ ADA Disability Accommodation
- ☐ Staff Conduct
- ☐ Restoration of Sentence Credit
- ☐ Personal Property
- ☐ PREA
- ☐ Medical Treatment
- ☐ Dietary
- ☐ Mail Handling
- ☐ HIPAA
- ☒ Disciplinary Report: 5-22-24
- ☐ Other (specify):

Date of Report          Facility where issued

Note: Protective Custody denials may be grieved immediately via the local administration on the protective custody status notification.

Attach a copy of any pertinent document (such as Disciplinary Report, Search Record, etc.) and place in the designated locked receptacle marked "grievance":
- Counselor, unless the issue involves discipline, is deemed and emergency, or is subject to review by the Administrative Review Board
- Grievance Officer, only if the issue involves discipline at the current facility or issue not resolved by counselor
- Chief Administrative Officer, only if EMERGENCY grievance
- Mail to Administrative Review Board, only if the issue involves protective custody, involuntary administration of psychotropic drugs, issues from another facility, except medical and personal property issues, or issues not resolved by the Chief Administrative Officer

Date & Summary of Grievance (Provide information including a description of what happened, when and where it happened, and name or identifying information for each person involved):

With this grievance, I appeal the results
of both disiplinary reports written against me on
5-22-24; One by Andrew Bennett, the other by
Zachary Hart. Both are completely falsified reports,

EMERGENCY: Check only if grievance involves substantial risk of imminent personal injury or other serious or irreparable harm to self.
☐ Check if this is NOT an emergency grievance ☒ Reserve camera footage of N2-825, 5-22-24,
☐ Continued on Reverse                                                    4:30pm - 7pm

Relief Requested: That I be administered a polygraph examination
concerning the allegations in both reports; that the
authors of the false reports be ministered a polygraph
also; that both tickets be expunged; that I be
removed from Menard; that Bennett and Hart be prosecuted.

Individual in Custody Signature          ID # K74565          Date 6-18-24

Counselor Response (if applicable):          Date Received:
☐ Outside jurisdiction of this facility. Send to: Administrative Review Board, PO Box 19277, Springfield, IL 62794-9277

RECEIVED

SEP 1 9 2024

ADMINISTRATIVE
REVIEW BOARD

Note to Individual: If you disagree with the counselor's response it will be your responsibility to forward grievance, with counselor's response, to the grievance officer

EMERGENCY REVIEW:          Date Received: JUL 8 2024

Is this determined to be of an emergency nature:
☐ Yes, expedite emergency grievance.
☒ No, an emergency is not substantiated. Individual should submit this grievance according to standard grievance procedure.

Chief Administrative Officer Signature          Date 7-19-24

Assigned Grievance #/Institution: K4-0724-3254
First Level Received: JUL 22 2024 ASU
Second Level Received: JUL 22 2024

___ Please check if using if utilizing/follow up DOC 0743p

3A Disciplinary Ticket Expung.

Distribution: Master File, Individual          Page 1/17          DOC 0046 (Rev. 06/2022)

Lt. S. Walker
C/O Z. HART
C/O A Bennett
C/O Faulconberry
C/O E Powell
C/O G Lepost.

This is a copy Because original Was turned
in on 8½ x 11 Sheet.

Exhibit B

Pilot Program Only

Illinois Department of Corrections
Individual in Custody Grievance

written against me as acts to cover up several felonious crimes — including Conspiracy against civil rights 720 ILCS 5/8-2.1, Intimidation 720 ILCS 5/12-6, Correctional Officer gang-related activities 720 ILCS 5/33-4(a), Unlawful restraint 720 ILCS 5/10-3, Official misconduct 720 ILCS 5/33-3(a)(2),(3),(8), etc. — committed against me by the authors of the false reports and their accomplices. Therefore, the false reports themselves are evidence of additional felonies: Tampering with Public Records 720 ILCS 5/32-8(a) and Obstructing justice 720 ILCS 5/31-4(a)(1),(b)(2).

### May 28, 2024 Hearing

On May 28, 2024 I appeared before the "Adjustment Committee."

\* Notice: I have not received an Adjustment Committee" summary for either the ticket written by Andrew Bennett or the ticket written by Zachary Hart, so I am not certain of what charges I was found guilty nor of the basis for the committee's decisions. (6/18/24).

At the hearing, I informed Chairperson Sandy Walker, first thing, that I needed to speak to IA before making my statement to the Committee because a ranking staff member threatened to beat me if I talked and, therefore, I reasonably believed my life/health was in jeopardy. Sandy Walker didn't seem alarmed or concerned about my health and safety, nor about the felonies I told her were committed against me. She demanded that I give my statement right then. She promised to refer me to IA. If she did, IA has yet to interview me.

Distribution: Master File, Individual                    Page 2/17                    DOC 0046 (Rev. 06/2022)

ILLINOIS DEPARTMENT OF CORRECTIONS
Individual in Custody's Grievance

1st Lvl rec:                                                                    2nd Lvl rec:

Next, I informed Sandy Walker that I hadn't been served one of the tickets. She simply tore the yellow copy off and asked whether I wanted it. I told her "yes", and she gave me the yellow copy of the ticket. Then she proceeded with a hearing on the ticket over my objection that I hadn't even read the ticket yet. Sandy Walker thereby denied me my right to 24hr prior notice. 504.80(b) (see copy of unserved ticket attached & exhibit A )

As I gave my statement, describing the felonious acts committed against me by the authors of the tickets, Sandy Walker repetitively cut me off, not allowing me to articulate a coherent account of what occurred. She thereby denied me my right to make any relevant statement in my defense. 504.80(f)(1)

I asked Sandy Walker whether she had reviewed the relevant camera footage (of N2-825, May 22, 2024, c. 5pm-6pm) because I am certain any footage will disprove Zachary Hart's report and corroborate my statement of a crime against me. Sandy Walker said she had not viewed the footage. Her dereliction in performing this basic investigatory duty both denied me the opportunity to be cleared by the video evidence and demonstrated her unwillingness to rely on "all relevant information and evidence" in making her decision. 504.80(c); 504.80(k)

RECEIVED
SEP 19 2024
ADMINISTRATIVE
REVIEW BOARD

4/17
Pilot Program Only

Illinois Department of Corrections
Individual in Custody Grievance

Also, at the "hearing", I gave Sandy Walker a list of witnesses, including the individuals who were housed in N2 (Menad CC) cells 824, 823, 822, 821, 820, and 826 and 401, 402, and 404 on May 22, 2024. I even listed the camera footage (from 5-22-24 4:30pm - @ 7pm, showing N2-825; 5-22-24 5:45 - 7:30pm, showing N2-403; and 5-23-24 4pm - 5pm, showing N2-403) as witnesses. I informed Sandy Walker that the witnesses could testify to the fact that I was assaulted/battered by Zachary Hart in cell N2-825 on May 22, 2024; that the account Hart gives in his report is false; that I was still being tortured and harassed by Hart, Faulkenberry, and others on 3-11 shift up to the "hearing date" (5-28-24) * the harassment and torture continues up to now.

Sandy Walker, to my knowledge (upon information and belief), did not interview a single one of about twelve witnesses I listed. Nevertheless, she found me guilty of whatever she's found me guilty of. I don't know. Remember, I have yet to receive a summary from the Committee.[1]

By her actions, Sandy Walker has demonstrated her partiality, and she has aided and abetted in the cover up of several felonies committed against me. That is called Obstructing justice 720 ILCS 5/31-4(a)(1) and (b)(2).

---

[1] Menard has a policy/practice of withholding summaries for months, until any seg time is completed. In fact, the CAO doesn't even sign off on the Seg time until it's been served, in order to make any C-grade sanction consecutive to Seg-time served. This is contrary to AD 05.15.100 and DR 504.

Distribution: Master File, Individual    Page 2 of 2    DOC 0046 (Eff. 4/2022)

RECEIVED

SEP 19 2024

ADMINISTRATIVE
REVIEW BOARD

## The Bennett Report

Andrew Bennett, the ringleader of the ongoing violent conspiracy against my civil rights, invented the allegations and "observation" in his report out of the reservoir of malice in his corrupt mind, with the intent to cover up the truth: that, on 5-22-24, he unlawfully restrained me and confined me in the segregation building without my consent or any other lawful authority, and he handed me over to a lynch mob (i.e., Zachary Hart, Zachary Powell, Garrett Leposky, et al) knowingly. His false report is a criminal attempt to avoid justice by fictionally converting the victim (me) into an offender.

Aside from its criminally fictitious nature, Bennett's report suffers from two fatal flaws under 20 Illinois Administrative Code 504.

First, Andrew Bennett presents no evidence for his report; only his naked allegation. 20 Illinois Administrative Code 504.80(K) requires that the Adjustment Committee decide whether I committed the offense(s) based upon "evidence" 504.80(k); that in order to find me guilty of an offense there must be "some evidence" 504.80(K)(1); and that the action taken by the Committee must be "based upon the [evidence] admitted" 504.80(L) (emphasis added). Andrew Bennett admitted no evidence, and, therefore, no basis upon which the Committee could lawfully take disciplinary action. He didn't even offer a witness. All Andrew Bennett admitted was his naked and contested allegation, which may not serve as

RECEIVED

SEP 1 9 2024

ADMINISTRATIVE
REVIEW BOARD

## The Hart Report

On 5-22-24, between 5 and 6:30 pm, Zachary Hart sexually humiliated and harassed me during a "strip search" in the Seg (N2 Menard C.C.) intake area; threw my Kuffi (religious headwear) onto the floor, as a show of disrespect; and took me, shackled and cuffed (behind my back) to N2-825 where he criminally assaulted and battered me in aggravated fashion (including strangulation), causing me several bodily injuries. Zachary Powell aided and abetted Zachary Hart in the assault and aggravated battery by performing look out and other support.
In order to cover up these civil and criminal violations against me, Zachary Hart wrote the instant false report against me, adding insult to my injuries. Once again Hart is aided and abetted by Powell, the "witness" on the Hart Report.
Like the Bennett Report, the Hart Report has fatal flaws. Although it has its own evidence and substantiation issues, those are not the Hart Report's fatal flaws. What kills this report? Stupidity, incredibleness, common sense, and the laws of physics.
When I use the term "stupidity" here, I mean Zachary Hart's story is stupid, and he seems to expect the audience for his fiction to be stupid enough to believe it's non-fiction, or biased enough to simply say "Amen" to whatever he says, which would be stupid.
First off, Zachary Hart says fictional Omar

17

RECEIVED

SEP 1 9 2024

ADMINISTRATIVE
REVIEW BOARD

notice the aggressive movement(s) of the restrained individual, and the officer would fight to maintain control over the individual, which would create a noticeable struggle, a dramatic scene. Does the camera footage outside of N2-825 capture any such drama on 5/22/24 around 5:20-6pm? No.

Zachary Hart's fiction is incredible and unbound by the laws of physics, sci-fi.

I bet Zachary Hart wishes he could have written a fictional tale that did not include his character "Omar" wearing leg irons (or cuffs). But the inconvenient truth is that I, real Omar, was really in leg irons at the time, and every second of camera footage from every relevant camera will show that. Zachary Hart knew that inconvenient truth when he sat down to construct this tale, so he was forced to mention the leg irons, but he hopes that common sense is irrelevant here, that truth doesn't matter. In lying with that hope, Hart alleges that, after breaking free from the control of fictional Hart, fictional Omar "[ran] to the back of the cell [while in handcuffs and leg irons]." (pause)

Once again, fictional Omar proves how incredible he is: he can run in leg irons, a feat ten times more impressive than someone running in six-inch heels; that's for sure. Well, I guess (common sense). I have never attempted to run in leg irons (shackles) because, as a primary thing, I don't think I can. Plus, I've never needed to try it. I imagine I wouldn't be able to get very far very fast, and the effort

RECEIVED

SEP 1 9 2024

ADMINISTRATIVE
REVIEW BOARD

shackled and cuffed behind his back, and runs his stupid ass into a cell [N2], why doesn't fictional Hart (supposed to be a professional security officer) simply close the door. Clodoor? Lock the stupid Omar inside the cell [N3]. I'll return to that point later.

What happens next in **Zachary Hart's** fictional account? After "Omar" runs to the back of the cell? **Hart** says "Omar" then turned and ran toward "Hart". And for what reason did "Omar" run back toward "Hart"? In the God-voice, the narrator tells us fictional Omar was (author)        "trying to exit the cell." W8, What?
* The shackles in use at fictional Menard must be utterly ineffective. *|

Now "Omar" is turning and running? In shackles? **Incredible** agility; especially in a N2 (Menard C.C.) cell. N2 cells have only about 2½ ft of space (wall-to-edge of bunks) for a person to maneuver about. It's a tight alley about 9½ ft long. It's hard enough for an able-bodied person to walk and turn around in these cells, without shackles on. I would love to see a fool try to run and turn in these cells — especially with shackles on. Can you say "the 3 stooges"?
Wait for it. Yes, there's more stupid.
**Remember, Zachary Hart** has charged me with an attempt to assault him. He hopes, it's safe to assume, to use the description of "Omar"

---

[N2] I've been tryin' to get out of prison cells for +26 years #restorative justice.master

[N3] and let the ~~Smart Omar~~ go home #clemency

RECEIVED
SEP 19 2024
ADMINISTRATIVE
REVIEW BOARD

"Yeah I have no confidence in this guy's "control" skills. Do you?

Let's humor **Hart** on the control part for a spell, and go see what **common sense** and the laws of physics are whispering to each other about.

**Common sense** says, "If fictional Omar ran ~~fictional~~ toward ~~Hart~~ out the exit, then he was facing "Hart" and the exit."

**The laws of physics** interjects, "So, when fictional Hart pushed fictional Omar, he had to push him in the front of his body, with enough force to reverse fictional Omar's momentum, while simultaneously driving him "back into the cell" far enough to allow himself to enter the cell, also, and to enter the cell in a position of power to "regain control". Man, that's a lot of force!"

**Common sense** says, "It seems like that amount of force should've knocked "Omar" on his back or something with their shackles on his ankles."

Okay, so **Hart's** story doesn't make sense, and it defies the laws of physics, but at least some of the **stupid** parts are funny. Like, after all of fictional Omar's running [with shackles on] and all of fictional Hart's heroic (Herculean) effort to push the runner back into the cell, and to regain control, what does fictional Hart do next? **Incredibly**, he says to the raging bull, let me take those shackles off of you. WTF! why are you about to free the feet of an intent runner? You haven't even regained control yet, have you? Let's see. Nope, he has not regained control. **Remember** where the security lead (control) is? It's on the exits, behind

RECEIVED

SEP 19 2024

ADMINISTRATIVE
REVIEW BOARD

15/17

from outside the IDOC. It's a shame that I must place my hope for restorative justice outside of the IDOC, but that's a reality that I have learned to accept through my experiences with the IDOC and its 504 system in the past 16 months. I have learned that the 504 Code is only rhetoric to the Local Unionist /staff gangs who run security at Hill C.C., Menard C.C., Western C.C., and several other facilities. I have learned that the ARB is biased against individuals in custody and regularly obstructs justice by either refusing to review or refusing to investigate grievance appeals. I have learned that any staff member who will lie on and pen whip an individual in custody possesses the power to punish that individual in custody: because any false report by a staff member is likely to be substantiated without any evidence, on the lie alone, producing sanctions. I have learned that African-Americans, Latinos, and marginal- ized European-American individuals in custody are regular targets of staff hostility, harassment, pen-whipping, and punishment; that African-Americans are especially disproportionately punished and sanctioned to forms of restrictive housing (Seg & C-grade wings), African-Americans consistently representing 85% or more



RECEIVED
SEP 19 2024
ADMINISTRATIVE
REVIEW BOARD

17/17

the misconduct and abuse by staff that has gone unreviewed or uninvestigated by the ARB and Director. No accountability, but I will not belabor the point here.

My trouble is that I tend to tell people when they stand on my foot, "Hey, you're standing on my foot." And if they continue to deliberately stand on my foot, I say "Get off my damn foot!" I call this my trouble not because I'm wrong for this assertiveness, but because my requests and demands for human dignity and human rights often get me in trouble with oppressive staff members. But self-assertion of this sort is good, so it's "good trouble."

Corrupted staff members will lynch my reputation and body with pens and battery, but I will not silently endure inhumane treatment and housing, so I will speak because of conflict with this oppression until I see evidence, clear and convincing, that my voice is heard.

No Justice No Silence!

Omar Ashanti Johnson, Citizen of Illinois, and victim of state violence.


RECEIVED
SEP 19 2024
ADMINISTRATIVE
REVIEW BOARD

ILLINOIS DEPARTMENT OF CORRECTIONS
## RESPONSE TO INDIVIDUAL IN CUSTODY'S GRIEVANCE

*E-5-11*

| Grievance Officer's Report | | |
|---|---|---|
| Date Received: 07/22/2024 | Date of Review: 08/09/2024 | Grievance #: K4-0724-3254 |
| Individual in Custody Name: JOHNSON,OMAR | | ID#: K74565 |

**Nature of Grievance:**

Disciplinary Report dated 5/22/2024 issued by Officer A. Bennett for- 206, 304, 202401328/1-MEN
Disciplinary Report dated 5/22/2024 issued by Officer Z. Hart for- 601.Attempt/102b, 215, 307, 202401330/1-MEN.

**Facts Reviewed:**

Individual in Custody submitted a grievance dated 6/18/2024 regarding the above disciplinary reports. He grieves that both Disciplinary Reports are fabricated. Claims that the North 2 restricted housing unit is racial discriminating. Claims staff is messing with his mail and his privileged mail has not been allowed/or destroyed and claims his grievances are not being "registered" with the Grievance Office.

Relief Requested: "That I be administered a polygraph examination concerning the allegations in both reports; that the authors of the false reports be ministered a polygraph also; that both tickets be expunged, that I be removed from Menard; that Bennett and Hart be prosecuted."

Grievance #K4-0724-3254 was received on 7/18/2024 and marked emergency by the individual in custody. It was not deemed an emergency by the Warden on 7/19/2024. It was sent to the Menard Grievance Office for processing on 7/22/2024.

Grievance Office reviewed IDR, Ticket Summary, DR 504 procedures & contacted the Adjustment Committee.

CONTINUED ON NEXT PAGE...

**Recommendation:**

It is the recommendation of this Grievance Officer that the individual in custody's grievance be DENIED. Based on, the nature of the charges and disciplinary history, the sanctions imposed by the Adjustment Committee are found to be correct as written and processed in accordance with DR504.

| Jeffrey Olson, Correctional Counselor I - MEN | Jeffrey Olson | Digitally signed by Jeffrey Olson Date: 2024.08.09 12:54:11 -05'00' |
|---|---|---|
| Print Grievance Officer's Name | | Grievance Officer's Signature |

(Attach a copy of Individual in Custody's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response | | |
|---|---|---|
| Date Received: 08/09/2024 | ☑ I concur    ☐ I do not concur    ☐ Remand | |
| Action Taken: | | |

**RECEIVED**

**SEP 1 9 2024**

**ADMINISTRATIVE
REVIEW BOARD**

| Kevin Reichert | Digitally signed by Kevin Reichert Date: 2024.08.16 14:26:45 -05'00' | |
|---|---|---|
| | Chief Administrative Officer's Signature | Date |

| Individual in Custody's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must, within 30 days after the date of the Chief Administrative Officer's decision, be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents.)

| Individual in Custody's Signature | K74565 | 8-28-24 |
|---|---|---|
| | ID# | Date |

☑ Disciplinary    ☐ Investigative    Facility: Men___ ___orrectional Center    Date: 5/22/2024

Name of Individual in Custody: Johnson, Omar    ID #: K74565    SMI: ☐ yes ☑ no    Race: Black

Observation Date: 5/22/2024    Approximate Time: 5:45    ☐ a.m. ☑ p.m.    Location: North 2 8-25

Offense(s): DR 504: 601;102b- Assault, 215- Disobeying a Direct Order Essential to Safety and Security, 307- Unauthorized Movement

Observation: (NOTE: Each offense identified above must be substantiated.)

On Wednesday 5/22/2024, at approximately 5:45 PM I Correctional Officer Hart, Zachary #10832, was escorting Individual in Custody Johnson, Omar (K74565) to cell North 2 8-25 along with Correctional Officer Powell, Zachary #11937. As I arrived at the cell, Johnson broke free from my control and ran to the back of the cell while in handcuffs and leg irons and then turned and ran toward me trying to exit the cell. I pushed Johnson back into the cell in order to prevent him from exiting the cell and entered the cell to regain control of Johnson and to prevent him from trying to exit the cell again. I gave Johnson multiple direct orders to kneel on the ground so the leg irons could be removed, and Johnson ran toward me again and I administered a short burst of OC pepper spray to gain compliance. I along with C/O Powell secured Johnson on the ground and I notified Sgt. Leposky Garrett #9242 to report to cell North 2 8-25.

Witness(es): C/O Powell, Zachary #11937

☐ Check if Disciplinary Report Continuation Page, DOC 0318, is attached to describe additional facts, observations or witnesses

| C/O Hart, Zachary | 10832 | ___ | 5/22/2024 | 6:20 | ☐ a.m. ☑ p.m. |
|---|---|---|---|---|---|
| Reporting Employee (Print Name) | Badge # | Signature | Date | Time | |

### Disciplinary Action:

**Shift Review:** ☐ Temporary Confinement    ☐ Investigative Status    Reasons: _____

Printed Name and Badge # _____    Shift Supervisor's Signature (For Transition Centers Chief Administrative Officer) _____    Date _____

**Reviewing Officer's Decision:** ☐ Confinement reviewed by Reviewing Officer    Comment: _____

☐ Major Infraction, submitted for Hearing Investigator, if necessary and to Adjustment Committee

☐ Minor Infraction, submitted to Program Unit

Print Reviewing Officer's Name and Badge # _____    Reviewing Officer's Signature _____    Date _____

☐ **Hearing Investigator's Review Required** (Adult Correctional Facility Major Reports Only)

Print Hearing Investigator's Name and Badge # _____    Hearing Investigator's Signature _____    Date _____

**Procedures Applicable to all Hearings on Investigative and Disciplinary Reports**

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

**Procedures Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports**

You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and ___ ___ wh___ ___ testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. ___ ___ ___ still ass___ ___ if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

☐ Check if individual in custody refused to sign    Individual in Custody's Signature _____    ID# _____

RECEIVED SEP 19 2024 ADMINISTRATIVE REVIEW BOARD

Serving Employee (Print Name) _____    Badge # _____    Signature ☐ a.m. ☐ p.m. _____

Date Served _____    Time Served _____

☐ I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

Individual in Custody's Signature _____    ID# _____

----

(Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing)

Date of Disciplinary Report _____    Print individual in custody's name _____    ID# _____

I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date

Print Name of witness _____    Witness badge or ID# _____    Assigned Cell (if applicable) _____    Title (if applicable) _____

Witness can testify to: _____

Print Name of witness _____    Witness badge or ID# _____    Assigned Cell (if applicable) _____    Title (if applicable) _____

Witness can testify to: _____

Distribution: Master File, Individual in Custody

Page 1 of 2

Printed on Recycled Paper

DOC 0317 (Rev. 7/2021)

*[Handwritten margin note:]* This is a copy of the yellow copy of the ticket, which Sandy Walker (committee Chairperson) tore off and gave to me on 5/28/24 at the Committee hearing after I told her I was never served this ticket. Notice no signatures in the service area. (see Grv. # K4-0724-3254(B), pg-3)

*[Handwritten:]* Exhibit

ILLINOIS DEPARTMENT OF CORRECTIONS
**Disciplinary Report Continuation Page**

**Menard Correctional Center**
Facility

☑ Disciplinary Report    ☐ Investigative Report    ☐ Disciplinary Summary    ☐ Adjustment Committee Summary

Report/Incident Date: 5/22/2024 _____    Incident # (if applicable): _____

Individual in Custody Information:
Name: Johnson, Omar _____    ID # K74565 _____

Use the space below to provide any additional information.
Once Sgt. Leposky arrived at the cell, I removed myself from the situation. Proper chain of command notified. ID by state ID and 0360.

RECEIVED

SEP 1 9 2024

ADMINISTRATIVE
REVIEW BOARD

1330

ILLINOIS DEPARTMENT OF CORRECTIONS
**Disciplinary Report**

**Type of Report:**
☑ Disciplinary    ☐ Investigative

Facility: Menard Correctional Center

Date: 5/22/2024

Name of Individual
in Custody: Johnson, Omar        ID #: K74565        SMI: ☐ yes ☑ no    Race: Black

Observation Date: 5/22/2024    Approximate Time: 5:45    ☐ a.m. ☑ p.m.    Location: North 2 8-25

Offense(s): DR 504:    601;102b- Assault, 215- Disobeying a Direct Order Essential to Safety and Security, 307- Unauthorized Movement

**Observation:** (NOTE: Each offense identified above must be substantiated.)
On Wednesday 5/22/2024, at approximately 5:45 PM I Correctional Officer Hart, Zachary #10832, was escorting Individual in Custody Johnson, Omar (K74565) to cell North 2 8-25 along with Correctional Officer Powell, Zachary #11937. As I arrived at the cell, Johnson broke free from my control and ran to the back of the cell while in handcuffs and leg irons and then turned and ran toward me trying to exit the cell. I pushed Johnson back into the cell in order to prevent him from exiting the cell and entered the cell to regain control of Johnson and to prevent him from trying to exit the cell again. I gave Johnson multiple direct orders to kneel on the ground so the leg irons could be removed, and Johnson ran toward me again and I administered a short burst of OC pepper spray to gain compliance. I along with C/O Powell secured Johnson on the ground and I notified Sgt. Leposky Garrett #9242 to report to cell North 2 8-25.

Witness(es): C/O Powell, Zachary #11937

☐ Check if Disciplinary Report Continuation Page, DOC 0316, is attached to describe additional facts, observations or witnesses.

| C/O Hart, Zachary | 10832 | [signature] | 5/22/2024 | 6:20 | ☐ a.m. ☑ p.m. |
|---|---|---|---|---|---|
| Reporting Employee (Print Name) | Badge # | Signature | Date | Time | |

**Disciplinary Action:**

Shift Review: ☑ Temporary Confinement    ☐ Investigative Status    Reasons: _NATURE OF OFFENSE_

_MAT EDWARD #683_    _[signature]_    _5-22-24_
Printed Name and Badge #    Shift Supervisor's Signature    Date
(For Transition Centers, Chief Administrative Officer)

Reviewing Officer's Decision: ☑ Confinement reviewed by Reviewing Officer    Comment: _I CONCUR_

☑ Major Infraction, submitted for Hearing Investigator, if necessary and to Adjustment Committee
☐ Minor Infraction, submitted to Program Unit

_BKahn  802_    _[signature]_    _5/22/24_
Print Reviewing Officer's Name and Badge #    Reviewing Officer's Signature    Date

☑ Hearing Investigator's Review Required (Adult Correctional Facility Major Reports Only):

_Akins SYA_    _[signature]_    _5-24-24_
Print Hearing Investigator's Name and Badge #    Hearing Investigator's Signature    Date

**Procedures Applicable to all Hearings on Investigative and Disciplinary Reports**
You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

**Procedures Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports**
You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

☑ Check if Individual in custody
refused to sign        Individual in Custody's Signature        ID#

_KFalkenbug.10_    _66681_    _[signature] KFau_
Serving Employee (Print Name)    Badge #    Signature

_5-23-24_    _735_    ☑ a.m. ☐ p.m.
Date Served    Time Served

☐ I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

_____    _____
Individual in Custody's Signature        ID#

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

(Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing)

_____    _____    _____
Date of Disciplinary Report    Print Individual in custody's name    ID#

I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date:

| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |
|---|---|---|---|

Witness can testify to: _____

| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |
|---|---|---|---|

Witness can testify to: _____

Page 1 of 2
Printed on Recycled Paper

Distribution:    Master File
                Individual in Custody

DOC 0317 (Rev. 7/2021)

This section ← was filled in by someone after my 5-28-24 hearing on this ticket.

See Exhibit A.

#Tampering with record

RECEIVED

SEP 19 2024

ADMINISTRATIVE
REVIEW BOARD

1330

ILLINOIS DEPARTMENT OF CORRECTIONS
**Disciplinary Report Continuation Page**

**Menard Correctional Center**
Facility

☒ Disciplinary Report    ☐ Investigative Report    ☐ Disciplinary Summary    ☐ Adjustment Committee Summary

Report/Incident Date: 5/22/2024                    Incident # (if applicable): _____

**Individual in Custody Information:**
Name: Johnson, Omar                          ID #: K74565

Use the space below to provide any additional information.
Once Sgt. Leposky arrived at the cell, I removed myself from the situation. Proper chain of command notified. ID by state ID and 0360.

Page 2 of 2

Distribution: Master File, Individual in Custody        Printed on Recycled Paper        DOC 0318 (Rev. 7/2021)

RECEIVED
SEP 1 9 2024
ADMINISTRATIVE
REVIEW BOARD

## STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS

### ADJUSTMENT COMMITTEE
### FINAL SUMMARY REPORT

| | | | |
|---|---|---|---|
| **Name:** JOHNSON, OMAR | | **IDOC Number:** K74565 | **Race:** BLK |
| **Hearing Date/Time:** 5/28/2024  11:19 AM | | **Living Unit:** MEN-E-05-11 | **Orientation Status:** N/A |
| **Incident Number:** 202401330/1 - MEN | | **Status:** Final | |

| Date | Ticket # | Incident Officer | Location | Time |
|---|---|---|---|---|
| 5/22/2024 | 202401330/1-MEN | HART, ZACHARY R | NORTH 2 CELLHOUSE | 05:45 PM |

| Offense | Violation | Final Result |
|---|---|---|
| 601.Attempt/102b | Assault<br>Comments:while being escorted resisted | Guilty |
| 215 | Disobeying a Direct Order Essential to Safety and | Guilty |
| 307 | Unauthorized Movement | Guilty |

| Witness Type | Witness ID | Witness Name | Witness Status |
|---|---|---|---|

**No Witness Requested**

### RECORD OF PROCEEDINGS

Individual in Custody Johnson, Omar K74565 appeared before the committee for charges and plead not guilty stating "Other Individual in Custody said the cell was fucked up. Never broke free, never gave me a direct order, and never ran. He released me so I went to the water and didn't work, came to the front again and told him the water didn't work. He sprayed me with mace."

### BASIS FOR DECISION

Based on the observation of Reporting Employee while escorting individual in custody Johnson, Omar K74565 to cell North 2 8-25 along with C/O Powell. As R/E arrived at the cell  Johnson broke free from R/E control and ran to the back of the cell while in handcuffs and leg irons and then turned and ran toward R/E trying to exit the cell. R/e pushed Johnson back into the cell in order to prevent him from exiting the cell and entered the cell to regain control of Jonson and to prevent him from trying to exit the cell again. R/E gave Johnson multiple direct orders to kneel on the ground so the leg irons could be removed, and Johnson ran toward R/E again and R/E administered a short burst of OC pepper spray to gain compliance. R/E along with Powell secured Johnson on the ground and notified Sgt Leposky to report to cell North 2 8-25. Once Sgt Leposky arrive R/E removed himself from the situation. Chain of Command was notified.
Individual in Custody was identified by state ID and offender 360.
Committee finds Individual in Custody guilty based on information provided and accepts the written report to be a factual account of the incident and is satisfied the violations occurred as reported.
Individual in Custody  has a history that includes multiple citations for similar charges.
IA verified there was no camera footage was available to review.
Officer Powell witnessed the incident and stated IDR is correct as written.

### DISCIPLINARY ACTION   (Consecutive to any priors)

| RECOMMENDED | FINAL |
|---|---|
| 45 Days C Grade | 45 Days C Grade |
| 45 Days   Segregation | 45 Days   Segregation |
| 6 Months Contact Visits Restriction | 6 Months Contact Visits Restriction |
| **Basis for Discipline:nature of offense** | |

### Signatures
#### Hearing Committee

| | Signature | Date | Race |
|---|---|---|---|
| WALKER, SANDY L  - Chair Person | | 05/28/24 | WHI |
| JONES, ANTHONY B | | 05/28/24 | BLK |

Recommended Action Approved

Run Date: 8/9/2024 09:52:52                    Page 1 of 2

RECEIVED

SEP 1 9 2024

ADMINISTRATIVE
REVIEW BOARD

1328

N24-03

**ILLINOIS DEPARTMENT OF CORRECTIONS**
**Disciplinary Report**

**Type of Report:**
■ Disciplinary  ☐ Investigative   Facility: Menard Correctional Center    Date: 5/22/2024

Name of Individual in Custody: Johnson, Omar    ID #: K74565    SMI: ☐ yes ■ no    Race: Black

Observation Date: 5/22/2024    Approximate Time: 5:15  ☐ a.m. ■ p.m.    Location: Menard Health Care Unit

Offense(s): DR 504:    206- Intimidation or Threats, 304- Insolence

**Observation:** (NOTE: Each offense identified above must be substantiated.)

On Wednesday 5/22/2024, at approximately 5:15 PM, I Lieutenant Bennett, Andrew #4875 was observing mental health evaluations of Individuals in Custody that were received from the transfer bus. After Individual in Custody Johnson, Omar (K74565) was evaluated by Menard Mental Health staff, I observed Johnson exit the room and state" I'm gonna beat all your asses for interfering with my Mental Health just wait and see." I escorted Johnson, who was already secured in handcuffs for his Mental Health evaluation, to North 2 Restrictive Housing where he was evaluated by Menard Medical and Mental Health staff and cleared for Restrictive Housing. Proper chain of command notified. ID by state ID and 0360.

**Witness(es):** _____

☐ Check if Disciplinary Report Continuation Page, DOC 0318, is attached to describe additional facts, observations or witnesses.

| Lt. Bennett, Andrew | 4875 | | 5/22/2024 | 5:45 | ☐ a.m. ■ p.m. |
|---|---|---|---|---|---|
| Reporting Employee (Print Name) | Badge # | Signature | Date | Time | |

**Disciplinary Action:**

Shift Review: ■ Temporary Confinement   ☐ Investigative Status   Reason: NATURE OF OFFENSE

_____ Lt. Findley #483 _____    M.O.T. 516    5-22-24
Printed Name and Badge #    Shift Supervisor's Signature    Date
(For Transition Centers, Chief Administrative Officer)

**Reviewing Officer's Decision:** ■ Confinement reviewed by Reviewing Officer   Comment: I CONCUR

■ Major Infraction, submitted for Hearing Investigator, if necessary and to Adjustment Committee

☐ Minor Infraction, submitted to Program Unit

B Kuehn 802    BKO    5/23/24
Print Reviewing Officer's Name and Badge #    Reviewing Officer's Signature    Date

■ Hearing Investigator's Review Required (Adult Correctional Facility Major Reports Only):

Akins 349    5-24-24
Print Hearing Investigator's Name and Badge #    Hearing Investigator's Signature    Date

**Procedures Applicable to all Hearings on Investigative and Disciplinary Reports**

You have the right to appear and present a written or oral statement or explanation concerning the charges. You may present relevant physical material such as records or documents.

**Procedures Applicable to Hearings Conducted by the Adjustment Committee on Disciplinary Reports**

You may ask that witnesses be interviewed and, if necessary and relevant, they may be called to testify during your hearing. You may ask that witnesses be questioned along lines you suggest. You must indicate in advance of the hearing the witnesses you wish to have interviewed and specify what they could testify to by filling out the appropriate space on this form, tearing it off, and returning it to the Adjustment Committee. You may have staff assistance if you are unable to prepare a defense. You may request a reasonable extension of time to prepare for your hearing.

■ Check if individual in custody refused to sign

_____ Individual in Custody's Signature _____    ID#

M Falkenburry    0681    M Fau    Signature
Serving Employee (Print Name)    Badge #

5-23-24    730    ☐ a.m. ■ p.m.
Date Served    Time Served

☐ I hereby agree to waive 24-hour notice of charges prior to the disciplinary hearing.

_____ Individual in Custody's Signature _____    ID#

---

(Detach and Return to the Adjustment Committee or Program Unit Prior to the Hearing)

_____ Date of Disciplinary Report _____    Print Individual in custody's name    ID#

I am requesting that the Adjustment Committee or Program Unit consider calling the following witnesses regarding the Disciplinary Report of the above date:

| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |
|---|---|---|---|
| | | | |

Witness can testify to: _____

| Print Name of witness | Witness badge or ID# | Assigned Cell (if applicable) | Title (if applicable) |
|---|---|---|---|
| | | | |

Witness can testify to: _____

Distribution:  Master File
Individual in Custody

Page 1 of 1
Printed on Recycled Paper

DOC 0317 (Rev. 7/2021)

RECEIVED

SEP 19 2024

ADMINISTRATIVE
REVIEW BOARD

## STATE OF ILLINOIS -- DEPARTMENT OF CORRECTIONS

### ADJUSTMENT COMMITTEE
### FINAL SUMMARY REPORT

| | | | | |
|---|---|---|---|---|
| **Name:** JOHNSON, OMAR | | **IDOC Number:** K74565 | | **Race:** BLK |
| **Hearing Date/Time:** 5/28/2024  11:19 AM | | **Living Unit:** MEN-E-05-11 | | **Orientation Status:** N/A |
| **Incident Number:** 202401328/1 - MEN | | **Status:** Final | | |

| Date | Ticket # | Incident Officer | Location | Time |
|---|---|---|---|---|
| 5/22/2024 | 202401328/1-MEN | BENNETT, ANDREW J | HEALTH CARE UNIT | 05:15 PM |

| Offense | Violation | Final Result |
|---|---|---|
| 206 | Intimidation Or Threats | Guilty |
| 304 | Insolence | Guilty |

| Witness Type | Witness ID | Witness Name | Witness Status |
|---|---|---|---|

**No Witness Requested**

### RECORD OF PROCEEDINGS

Individual in Custody  Johnson, Omar K74565  appeared before the committee for charges and plead not guilty stating, "I never said this asked the C/O not to talk while I was talking to mental health."

### BASIS FOR DECISION

Based on the observation of the reporting employee on 5/22/24 at approx. 5:15pm I was observing mental health evaluations of Individuals in custody that were received from the transfer bus. After Individual in Custody  Johnson, Omar K74565 was evaluated by Menard Mental Health staff, I observed Johnson exit the rocm and state, "I'm gonna beat all your asses for interfering with my Mental Health just wait and see." I escorted Johnsor who was already secured in handcuffs for his Mental Health evaluation to North 2 RH .
Chain of Command Notified.
Individual in Custody Johnson, Omar K74565 was identified by ID card and offender O360.
Committee finds Individual in Custody guilty based on information provided and accepts the written report to be a factual account of the incident and is satisfied the violations occurred as reported.
Individual in Custody Johnson, Omar K74565 has a history that includes multiple citations for same charge the last one on 10/25/23.

### DISCIPLINARY ACTION  *(Consecutive to any priors)*

| RECOMMENDED | FINAL |
|---|---|
| 1 Months C Grade | 1 Months C Grade |
| 14 Days   Segregation | 14 Days   Segregation |
| **Basis for Discipline:Priors-nature of offense** | |

### Signatures
#### Hearing Committee

| | Signature | Date | Race |
|---|---|---|---|
| WALKER, SANDY L  - Chair Person | | 05/28/24 | WHI |
| JONES, ANTHONY B | | 05/28/24 | BLK |
| Recommended Action Approved | | | |

**Final Comments:** N/A

RECEIVED

SEP 1 9 2024

ADMINISTRATIVE
REVIEW BOARD

Run Date: 8/9/2024 09:52:04                    Page 1 of 2

Omar Ashanti Johnson
Plaintiff/Petitioner                    )
                                        )
                                        )
        Vs.                             )        No. K4-0724-3254
                                        )
                                        )
    Menard C.C.                         )
Defendant/Respondent                    )

## PROOF/CERTIFICATE OF SERVICE

TO: ARB                                 TO:
    PO BOX 19277
    Springfield, IL 62794-9277

                                                **RECEIVED**

TO:                                     TO:                 **SEP 19 2024**

                                                **ADMINISTRATIVE**
                                                **REVIEW BOARD**

1.  Appeal of Grievance # K4-0724-3254

2.

3.

4.

5.

6.

PLEASE TAKE NOTICE that on __September 6__, 20_24_ I placed the attached or
enclosed documents in the institutional mail at ____Menard____ Correctional Center.
properly addressed to the parties listed above for mailing through the United States Postal
Service.

Pursuant to 28 USC 1746, 18 USC 1621 or 735 ILCS 5/109, I declare, under penalty of perjury.
that I am a named party in the above action, that I have read the above documents, and that the
information contained therein is true and correct to the best of my knowledge

Dated:  9-6-24                          /s/ _Omar Ashanti Johnson_
                                        Name: Omar Ashanti Johnson
                                        IDOC#: K74565
                                        Address: PO BOX 1000
                                                 Menard, IL 62259

Omar Ashanti Johnson

K74565

Menard, C.C.

August 28, 2024

Areda Johnson, Chief Inspector

Illinois Department of Corrections

1301 Concordia Court

Springfield, IL 62794

cc: ARB
PO BOX 19277
Springfield, IL 62794-9277

RECEIVED

SEP 19 2024

ADMINISTRATIVE
REVIEW BOARD

Re:    **Appeal on Grievance #K4-0724-3254**

Chief Inspector Johnson:

I am the victim of several felonious acts committed against me on May 22, 2024 by **Andrew Bennett 4875**, **Zachary Hart 10822** [10832], et al.    These two individuals chose to write false disciplinary reports against me in order to cover up their crimes (see **Grv. #K4-0724-3254**, pg. 2; and **Account of Victimization, Exhibit B**, attached).

Here, I appeal the results of the biased and obstructive "Adjustment Committee" hearing on those false reports.

## CAO's Response

The CAO, Kevin Reichert, responds to this grievance with a rubber-stamped "I concur" to the recommendfation of Grievance Officer Jeffrey Olson.

Jeffrey Olson says his "Recommendation" is "Based on the nature of the charges and disciplinary history", not on the 504 standard of "some evidence." Olson goes on at length citing what the subjects of this grievance "advised" about the "Adjustment Committe" hearing or what they reported in their false reports. He performed no independent investigation.

So, the CAO, Kevin Reichert, concurs to a biased "Grievance Officer's Report" and "Recommendation", disregards inpartiality, truth, and the 504-required "some evidence" standard.

RECEIVED

SEP 1 9 2024

ADMINISTRATIVE
REVIEW BOARD

### Grievance Officer's Report

Grievance Officre Jeffrey Olson denied me an actual appeal of the Adjustment Committee's result where he failed to perform any independent investigation into the hearing or the underlying incidents.  He simply relied on the advice of **Sandy Walker** (Chairperson of committee), a subject of my grievance and pursued criminal complaint; and the reports of **Andrew Bennett**, **Zachary Hart** (and his "witness" **Zachary Powell**), who are also subjects of my grievance and pursued criminal complaint.   That is clear bias.

### "Adjustment Committee" Hearing

**Sandy Walker's** hearing was completely bogus from the beginning.   She showed no respect for the 504 Code or my health and safety (see **Grv. #K4-0724-3254**, ppg. 2-4).

She didn't allow me to speak to IA or to law enforcement before the

hearing--even after I requested to do so and told her my reason: that I had been crminally assaulted/battered by **Zachary Hart** and threatened to keep quiet about it by **Garrett Leposky**, staff members (Ibid.).

\* She forced me to hear the **Hart** ticket despite the fact that I had not been served the ticket until she gave it to me at the hearing on 5/28/24 (see **Grv. #K4-0724-3254,** pg. 3).   She literally tore off the yellow copy of the ticket and handed it to me seconds before hosting a hearing on the ticket, over my objection (see **Exhibit A**, a copy of the yellow copy she gave me at the hearing, showing the ticket had a blank service area).   That's a violation of the 504's 24hr notice requirement.   I notice that the copy of the ticket that the Grievance Officer attached to his response has a signature in the service area, alleging that a CO Falkenberry signed it and served it to me.   That info was no doubt added to the white copy of the ticket after the hearing, after **Sandy Walker** served me the ticket at the hearing.   That's criminal tampering with the public record.

**Sandy Walker**lies and says that I requested no witnesses.   Truth is, I gave her a list of witnesses (see**Grv. #K4-0724-3254**, pg. 4) and she chose not to interview them.

Indeed, **Sandy Walker** chose no to investigate this matter altogether.   Instead, she took steps to cover up for her colleagues, to prevent/obstruct their prosecution for violently conspiring against my civil rights.   For instance, she and IA (according to Walker) claim that there is no video of the incident on May


RECEIVED

SEP 1 9 2024

ADMINISTRATIVE
~~~~~ BOARD

22, 2024.   That is to say, there is no video of the front of N2 825, no video of me being paraded down N2 8 gallery battered and sprayed with pepper spray, no video of me being placed in torture cell N2 403.   Why is there no video? There are plenty of cameras on the walls outside these cells and on all of the galleries in North 2.

The video seems to have been intentionally destroyed is the obvious answer.   I bet that if I had actually broken free from CO **Hart** and ran into cell 825 there would be a video to show that.   But because CO **Hart** and CO **Powell** are lying about what happened at N2 825, there is mysteriously no video.

Sandy Walker is obstructing justice.   The "Adjustment Committee" hearing is only the vehicle she's using to do it.

As a final point, I reject the committee's position that my guilt of the offense may be based on my disciplinary history.   That is, if I was found guilty before of a similar offense, then that may serve as the basis of my guilt of the present offense(s).   That's not lawful or just reasoning.   The 504 Code requires that my guilt or innocence be based on the facts around the present charges and the presence of "some evidence", or the lack thereof, for the present charges. The "he-was-found-guilty-of-it-before-so-he-must-be-guilty-now" philosophy is arbitrary and oppressive, allowing staff members to secure my guilt based on a narrative they have created.   If my disciplinary history is so dispositive, why can't my 26-year history of no similar behavior (until 4-23-23) prove my innocence of the present charges?

RECEIVED

SEP 19 2024

ADMINISTRATIVE
REVIEW BOARD

I beg this Director and Chief Inspector to investigate my claims of criminal acts committed against me on May 22, 2024 (and continuing).  i am still in pursuit of criminal charges for the perpetrators.  I am still injured and I have been denied medical treatment and attention since May 22, 2024 incident.  There is a concerted effort by this Administration to cover this incident up, to conceal the fact that correctional officer gangs are daily abusing and torturing men of color in Menard's Segregation.

Respectfully submitted,

Omar Ashanti Johnson

K74565

Menard C.C.

**RECEIVED**

SEP 1 9 2024

ADMINISTRATIVE
REVIEW BOARD

ILLINOIS DEPARTMENT OF CORRECTIONS

## Administrative Review Board
## Return of Grievance or Correspondence

Individual in
Custody Name: _Johnson_ _____ _Omar_ _____ _____ _K74565_ ____
                          Last Name                          First Name                    MI        ID#

Facility: _Menard_ _____

☐ Grievance: Facility Grievance # (if applicable) _K4-0724-3254_ ___ Dated: _6/18/2024_ _____ or ☐ Correspondence: Dated: _____

Received: _9/19/2024_ _____ Regarding: _DR - 202401328/1-MEN, 202401330/1-MEN, 5/22/24_ _____
              Date

---

The attached grievance or correspondence is being returned for the following reasons:

**Additional information required:**

☐ Provide your original written Individual in Custody's Grievance, DOC 0046, including the counselor's response, if applicable.

☐ Provide a copy of the Response to Individual in Custody's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal; if timely.

☐ Provide dates when incidents occurred.

☐ Unable to determine nature of grievance or correspondence; submit additional specific information. Please return the attached grievance or correspondence with the additional information requested to: Administrative Review Board, 1301 Concordia Court, Springfield, IL 62794-9277

**Misdirected:**

☐ Contact your correctional counselor or Field Services regarding this issue.

☐ Request restoration of Statutory Sentence Credits to Adjustment Committee. If the request is denied by the facility, utilize the individual in custody grievance process outlined in Department Rule 504 for further consideration.

☐ Contact the Record Office with your request or to provide additional information.

☐ Personal property and medical issues are to be reviewed at your current facility prior to review by the Administrative Review Board

☐ Address concerns in a letter to: Illinois Prisoner Review Board, 319 E. Madison St., Suite A, Springfield, IL 62706

**No further redress:**

☐ Award of Earned Discretionary Sentence Credit is a discretionary administrative decision; therefore, this issue will not be addressed further.

☐ Administrative transfer denials are discretionary administrative decisions; therefore, this issue will not be addressed further.

☐ Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further.

☒ Administrative Review Board received the appeal 30 days past date of Chief Administrative Officer's decision; therefore, this issue will not be addressed further.

☐ This office previously addressed this issue on _____
                                                            Date

☐ No justification provided for additional consideration.

---

Other (specify): _Does not follow DR 504F. Appeal was received 30 days past the CAO decision._ _____

_____

Completed by: _Jon Loftus_ _____                                      _9/26/2024_ ____
                          Print Name                          Signature                Date

**Illinois Department of Corrections**
**Individual in Custody Grievance**

Housing Unit: N2    Bed #: 4-25                                    Pilot Program Only

| Date: 6-31-24 | Individual (please print): Omar Ashanti Johnson | ID #: K74565 | Race (optional): Human |
|---|---|---|---|

| Current Facility: Menard | Facility where grievance issue occurred: Menard |
|---|---|

Nature of Grievance:
- ☐ Staff Conduct
- ☐ Medical Treatment
- ☐ Disciplinary Report: _____
  - Date of Report     Facility where issued
- ☐ ADA Disability Accommodation
- ☐ Restoration of Sentence Credit
- ☐ Dietary

- ☐ Personal Property
- ☐ Mail Handling

- ☒ PREA
- ☐ HIPAA

☒ Other (specify): 720 ILCS 5/8-2.1; 720 ILCS 5/12-3.05, etc.

Note: Protective Custody denials may be grieved immediately via the local administration on the protective custody status notification.

Attach a copy of any pertinent document (such as Disciplinary Report, Search Record, etc.) and place in the designated locked receptacle marked "grievance":
- Counselor, unless the issue involves discipline, is deemed and emergency, or is subject to review by the Administrative Review Board
- Grievance Officer, only if the issue involves discipline at the current facility or issue not resolved by counselor
- Chief Administrative Officer, only if EMERGENCY grievance
- Mail to Administrative Review Board, only if the issue involves protective custody, involuntary administration of psychotropic drugs, issues from another facility, except medical and personal property issues, or issues not resolved by the Chief Administrative Officer

Date & Summary of Grievance (Provide information including a description of what happened, when and where it happened, and name or identifying information for each person involved):

This is my third attempt to submit a grievance related to felonious acts committed against me by correctional officer gang members Andrew Bennett, Zachary Hart, Zachary Powell, Garrett Leposky, "CO"

☒ EMERGENCY: Check only if grievance involves substantial risk of imminent personal injury or other serious or irreparable harm to self.
☐ Check if this is NOT an emergency grievance
☒ Continued on Reverse

Relief Requested: I am requesting (demanding) that the camera footage from the following locations and times and dates be preserved for the purpose of prosecuting felonies and defense against false charges:
N2 825, 5-22-24, 4:30pm - 7pm; N2 403, 5-22-24, 5pm-7:30pm; N2 403, 5-23-24, 4-6pm; N2 '425,' 6-25-24, 11pm-12:30AM; N2 425, 5-31-24, 6-9pm; N2 425, 6-7-24, 4-6:30pm

| Individual in Custody Signature | ID #: K74565 | Date: 6-31-24 |
|---|---|---|

Counselor Response (if applicable):                                    Date Received: 7/10/24
☐ Outside jurisdiction of this facility. Send to: Administrative Review Board, PO Box 19277, Springfield, IL 62794-9277

See Attached Response

Note to Individual: If you disagree with the counselor's response, it is your responsibility to forward grievance, with counselor's response, to the grievance officer.

EMERGENCY REVIEW:        Date Received: MEN JUL 01 2024        Assigned Grievance #/Institution: K4-0724-2883

Is this determined to be of an emergency nature:        First Level Received: MEN JUL 08 2024
☐ Yes, expedite emergency grievance.
☒ No, an emergency is not substantiated. Individual should submit this        Second Level Received: MEN AUG 28 2024
Grievance according to standard grievance procedure.

Chief Administrative Officer Signature        Date: 7-2-24

_____ Please check if using if utilizing follow up DOC 6743p
22-Camera Footage
7D. Harassment Verbal

Exhibit C
Exhibit C

STATE OF ILLINOIS )
                                    ) SS
COUNTY OF Randolph )

Conspiracy against civil rights AFFIDAVIT    part 1

I. Omar Ashanti Johnson being first duly sworn upon my oath depose and state that the following matters are both true and correct made upon personal knowledge and belief, and if called as a witness. I am competent to testify thereto: This is a statement of my victimization in an ongoing violent conspiracy against my civil rights: On May 22, 2024, at Menard Correctional Center, Chester, IL, in response to, and in order to interfere with, my free exercise of the right to freedom of speech, Andrew Bennett, having no lawful justification or authority restrained me and took me to Menard's Segregation building to be abused and confined in a torture cell, initiating and acting in furtherance of a conspiracy against my civil rights, in violation of 720 ILCS 5/8-2.1. Zachary Hart, joining and acting in futherance of this conspiracy, sexually humiliated and harassed me, attempted to confine me in a torture cell, and assaulted/battered me using a chemical weapon, blows, and strangulation, causing me several bodily injuries, in violation of 720 ILCS 5/12-3.05(a)(5). Zachary Powell joined the conspiracy and acted in furtherance as a look out and logistical support for Zachary Hart's assault/battery. Garrett Leposky joined and acted in furtherance of the conspiracy by threatening to further batter me "near to death" if I speak about their violence against me, violating 720 ILCS 5/12-6. Subsequently, the gang of conspirators confined me in a torture cell which was saturated with urine, smeared with human feces, filled with scores of flies and gnats, with no unsoiled bedding, in complete darkness where I remained confined until a non-conspirator removed me four days later. On May 23, 2024, "CO" Faulkenberry joined

Subscribed and sworn to                     Respectfully submitted.
before me on the 22 day
of   June         2024                       Omar Ashanti Johnson

Refruk McClure
NOTARY PUBLIC

OFFICIAL SEAL
ROSALYNN R MCCLURE
Notary Public, State of Illinois
Commission No. 989045
My Commission Expires
April 02, 2028

1/2

STATE OF ILLINOIS )
) SS
COUNTY OF Randolph )

Conspiracy against civil rights AFFIDAVIT part 2

I. Omar Ashanti Johnson being first duly sworn upon my oath depose and state that the following matters are both true and correct made upon personal knowledge and belief, and if called as a witness, I am competent to testify thereto: the conspiracy and

acted in furtherance by denying me my dinner at the behest of Zachary Hart and other conspirators. On May 26, 2024, "CO" Kitchens joined the conspiracy and acted in furtherance by denying me a shower and soliciting another officer to deny me my basic human needs, saying "He's got nothing coming" in support of Bennett, Hart, Leposky and the rest of the criminal "gang" (Kitchen's words), violating 720 ILCS 5/~~~~33-1(a). In efforts to conceal their crimes against me, Andrew Bennett and Zachary Hart both wrote falsified disciplinary reports against me. On May 28, 2024 Sandy Walker and the Internal Affairs (at Menard C.C.) staff concealed the video evidence of Hart's battery against me and of the falsity of his report, declined to investigate my claims of felonies committed against me by the gang of conspirators, and without due process sanctioned me to 60 days' confinement in solitary, where I am confined in a cave-like cell behind a solid rusted-metal door, with no air circulation inside, where temperatures reach >100° on 90° days, and I'm not allowed to leave the cell at all (i.e. 24hrs/7 days in the cell) everyday for four weeks now, violating 720 ILCS 5/31-4(a)(1), (b)(2). I am a victim of these crimes, and this is my statement to this Court, this office, in pursuit of justice.

Subscribed and sworn to before me on the 22 day of June 2024

Roaalynn R. McClure
NOTARY PUBLIC

Respectfully submitted.

Omar Ashanti Johnson



OFFICIAL SEAL
ROSALYNN R MCCLURE
Notary Public, State of Illinois
Commission No. 989045
My Commission Expires
April 02, 2028

2/2

Omar A. Johnson removed the "+" sign (plus) and added the ">" (greater than) sign. (1/10/25)

7-8.24

ILLINOIS DEPARTMENT OF CORRECTIONS

## Incident Report

Incident Number: _____

Type of Incident: _____

**If the answer is yes to any of the following questions, explain in narrative below:**

Facility/Program: Menard Correctional Center          Date of Incident: 7/1/2024      Time of Incident: 3:13 ____ ☐am ■pm

| | | | | | | |
|---|---|---|---|---|---|---|
| Was a Weapon Involved: | ☐ YES | ■ NO | Were Restraints / Force Used: | ☐ YES | ■ NO |
| Was Property Damaged: | ☐ YES | ☑ NO | Were Chemical Agents or OC Used: | ☐ YES | ☑ NO |
| Were Arrests Made: | ☐ YES | ☑ NO | Appr. Unit and/or Law Enf. Agency Notified: | ☐ YES | ☑ NO |
| Were there Media Inquiries: | ☐ YES | ☑ NO | Any Injuries / Hospitalizations: | ☐ YES | ☑ NO |

### Individuals in Custody / Staff Involved:

| Name | I.D. # | Name | I.D. # |
|---|---|---|---|
| Johnson, Omar Ashanti | K74565 | | |
| Loyd, Betty | | | |

### Witnesses to Incident:

| Name | I.D. # | Name | I.D. # |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

### Statement of Facts: (NARRATIVE)

Grievance #K4-0724-2883 was received in the Grievance Office on 7/1/2024 from Individual in custody Omar Ashanti Johnson, dated 06/31/2024, regarding PREA, camera footage, harassment. Chain of Command was notified on 07/1/2024. End of Report.

☐ Please check if utilizing the DOC 0435

| | | | | |
|---|---|---|---|---|
| Loyd Betty | Betty Loyd | 7/1/24 @ 3:13pm | MAT | 7-1-24 / 322 AM |
| Reporting Employee (Print) | Reporting Employee Signature | Date / Time | Person Accepting Report | Date / Time |

**Administrative Assessment:**

Chief Administrative Officer: _____          Date / Time: _____

Distribution:   Director, Deputy Director, File            Printed on Recycled Paper                    DOC 0434 (Rev. 2/2022)
         Legal Services (only if restraints/force used)

Illinois Department of Corrections

**Follow-up Individual in Custody Counselor Response**

Pilot Program Only

7-1-24

Housing Unit: N2          Bed #: 4-25          Assigned Grievance Number: K4-0724-2883

| Date: | Individual in Custody Name (please print): | ID #: | Race (optional): |
|-------|---------------------------------------------|-------|------------------|
| 07/15/2024 | Johnson, Omar | K74565 | |
| **Current Facility:** | | **Facility where grievance issue occurred:** | |
| Menard Correctional Center | | Menard Correctional Center | |

Grievance #K4-0724-2883. Concerning staff conduct. Per IA, the incident that Johnson Omar K74565 is referencing in the grievance is currently part of an ongoing investigation.

Teas

Counselor Name (Print)

Counselor Signature

07/15/2024

Date

# State of Illinois - Department of Corrections
## Counseling Summary

| | | | |
|---|---|---|---|
| **IDOC #** | K74565 | **Counseling Date** | 07/08/24 08:28:59:913 |
| **Offender Name** | JOHNSON, OMAR | **Type** | Collateral |
| **Current Admit Date** | 06/18/1999 | **Method** | Grievance |
| **MSR Date** | | **Location** | MEN GRIEVANCE OFFICE |
| **HSE/GAL/CELL** | N2-04-25 | **Staff** | LOYD, BETTY J., Office Associate |

Emergency grievance #K4-0724-2883 was deemed non-emergency by the CAO on 7/2/2024. It was marked PREA by the individual and reviewed by IA and the PREA Coordinator. It was deemed non-prea. It will be reviewed accordingly

**Print Date 7/8/2024**

GO's
2 nd
Responce to
this grievance

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO INDIVIDUAL IN CUSTODY'S GRIEVANCE**   N 2 - 6 - 23

| Grievance Officer's Report | | |
|---|---|---|
| Date Received: 08/28/2024 | Date of Review: 11/22/2024 | Grievance #: K4-0724-2883 |
| Individual in Custody Name: Johnson, Omar | | ID#: K74565 |

**Nature of Grievance:**

Incidents of staff misconduct involving multiple staff members and a PREA claim

**Facts Reviewed:**

Grievance Office reviewed on 11/22/2024 - Contacted Internal Affairs, they advised this is part of an ongoing investigation.

Per AD 04.01.114 If the individual in custody rejects the Counselor's response, the individual in custody must forward a copy of the DOC 0046 that includes the Counselor's response and any attachments by the Counselor to the DOC 0046 to the Grievance Officer within fourteen (14) calendar days of receipt of the Counselor's response. This grievance is out of time frame.

*This grievance was sent by individual in custody to the counselor within the time frame, and to the grievance officer within the time frame. I cannot control when Grievance Office receives it — or claims to receive it — through the corrupt grievance-mailing system in Menard C.C.*

*OAJ 12-16-24*

**Recommendation:**

Based upon a total review of all available information, this Grievance Officer recommends the Individual in Custody's grievance be DENIED. The PREA is an open investigation, and the rest of this grievance is out of time frame.

J. Guetersloh - Correctional Counselor 1          Jacob Guetersloh  Digitally signed by Jacob Guetersloh Date: 2024.11.22 11:27:20 -06'00'
Print Grievance Officer's Name                               Grievance Officer's Signature
(Attach a copy of Individual in Custody's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response | | |
|---|---|---|
| Date Received: 11/22/2024 | ■ I concur   ☐ I do not concur   ☐ Remand | |

**Action Taken:**

Kevin Reichert   Digitally signed by Kevin Reichert Date: 2024.11.22 14:58:41 -06'00'
Chief Administrative Officer's Signature                                    Date

**Individual in Custody's Appeal To The Director**

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must, within 30 days after the date of the Chief Administrative Officer's decision, be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents.)

_____  K74565  12-16-24
Individual in Custody's Signature          ID#          Date

Assigned Grievance #/Institution _____    Housing Un ___ E___ Bed # 5-11

**ILLINOIS DEPARTMENT OF CORRECTIONS**
1st Lvl rec. _____ Individual in Custody Offender's **Grievance**    2 lo Lvl rec ___ N ___

| Date: 9-6-24 | Offender (please print): Omar Ashanti Johnson | ID #: K74565 | Race (optional): Human |
|---|---|---|---|
| Present Facility: Menard | | Facility where grievance issue occurred. Menard | |

**Nature of grievance:**

K4-0924-4383

☐ Personal Property        ☐ Mail Handling        ☐ Medical Treatment        ☐ ADA Disability Accommodation

☒ Staff Conduct        ☐ Dietary        ☐ HIPAA        ☐ Restoration of Sentence Credit

☐ Transfer Denial by Facility        ☐ Other (specify): Stalking; Intimidation; battery;

☐ Disciplinary Report        excessive force; failure to protect.

Date of Report        Facility where issued

Note: Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Search Record, etc.) and place in the designated locked receptacle marked "grievance":

Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to review by the Administrative Review Board
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor
Chief Administrative Officer, only if EMERGENCY grievance
Mail to Administrative Review Board, only if the issue involves protective custody, involuntary administration of psychotropic drugs, issues from another facility except medical and personal property issues, or issues not resolved by the Chief Administrative Officer.

Summary of Grievance (Provide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved):

This Emergency grievance is against Zachary Hart, Kevin Reichert, Anthony Wills, and IA Lieutenant Hanks for criminal stalking, intimidation, and battery, and excessive force; and for failure to protect.

Since he committed aggravated battery on me on May 22, 2024, Zachary Hart has repeatedly engaged in conduct towards me that he knows would cause a reasonable person to fear for

☒ Continued on reverse

**Relief Requested:**

Preserve video footage from: 8-29-24, 3:00pm-3:20pm ECH 511; 8-30-2' 5:15-5:35pm ECH 512; 8-30-24, 5:40-5:55pm ECH 512; 9-2-24, 9:52- 9:54pm ECH 511; 8-28-24, 11:00pm-11:30pm ECH 511; keep Zachary Hart, Zachary Powell, Andrew Bennett, and Garrett Lepesky away from me for our safety; Recommend Director issue emergency transfer.

☒ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

☐ Check if this is NOT an emergency grievance.

_(signature)_ Offender's Signature        K74565 ID#        9-6-24 Date

(Continue on reverse side if necessary)

**Counselor's Response (if applicable)**    Date Received: _____    ☐ Send directly to Grievance Officer

☐ Outside jurisdiction of this facility. Send to: Administrative Review Board, PO Box 19277, Springfield, IL 62794-9277

Response:

_____
_____
_____
_____
_____
_____
_____

Print Counselor's Name        Sign Counselor's Name        Date

Note to offender: If you disagree with the counselor's response, it is your responsibility to forward grievance with counselor's response to the grievance officer.

**EMERGENCY REVIEW:**    Date Received: _____    C/o Hart
                                                        A. Reichert    7C- Excessive Physical
Is this determined to be of an emergency nature.  IA        V. Wills    Force/ Intimidation
☒ Yes, expedite emergency grievance                          Hanks    22 Camera footage
☐ No, an emergency is not substantiated. Offender should submit this grievance according to standard grievance procedure.

_(signature)_ Chief Administrative Officer's Signature        1 of 3        9-12-24 Date

Exhibit D
~~Exhibit C~~

Pilot Program Only

Illinois Department of Corrections
Individual In Custody Grievance

All of those acts are examples of Hart's relentless stalking and intimidation of me.

As to his act of battery and excessive force against my neighbor on 9-2-24: At about 5:20 - 5:35 pm, my neighbor in E-512 stopped Zachary Hart and told him he (my neighbor) needed a crisis team because he (my neighbor) was feeling like committing suicide. As someone who takes suicidal ideation very seriously (see record of Hill C.C. IA about me helping to save an individual from suicide-by-hanging on July 15, 2022 at Hill C.C.), I stepped to the bars to attempt to consul my neighbor and to be a witness of Hart's cruel and unprofessional denial. Zachary Hart told my neighbor "no" on the crisis team. He said "I'm not getting a crisis team for you. Kill yourself" as he walked off the gallery pass my cell. About 5-10 minutes later, while Zachary Hart passed out mail on 5 gallery ECH, he noticed my neighbor attempting to hang himself. Hart sprayed an excessive amount of pepper spray on my neighbor. As my neighbor yelled and moaned in pain from the pepper spray, Zachary Hart cruelly and sadistically mimicked him moaning and called him "dumb ass". Then he looked at me standing there witnessing that cruelty and said to me, "you want to get sprayed in the eye again?"

Mr. Wills, Mr. Reichert, and Mr. Hanks, how much violence will you tolerate from Zachary Hart? Must he kill an individual — or get killed — before you decide to stop him. You have been informed about his violence and false report against me on May 22, 2024. Yet, you still permit him to work around me. You are encouraging a sick young man, who needs psychological help and no job with the IDOC, to continue and grow worse in his sickness and violence; and we individuals in your custody and under the purview of your protective power are left to fend for ourselves against him. Do your job and stop him immediately. At this point all of you share guilt and responsibility for his crimes. I promise you I will do what I must to defend myself from Hart and any other white nationalist correctional-officer gang member at Menard. Don't put, or keep me, in that position!

*[margin note:]* This occurred on 8/30/24, not 9/2/24. OAJ 10-24-24

# State of Illinois - Department of Corrections

## Counseling Summary

| | | | |
|---|---|---|---|
| **IDOC #** | K74565 | **Counseling Date** | 09/16/24 10:34:40:257 |
| **Offender Name** | JOHNSON, OMAR | **Type** | Collateral |
| **Current Admit Date** | 06/18/1999 | **Method** | Grievance |
| **MSR Date** | | **Location** | MEN GRIEVANCE OFFICE |
| **HSE/GAL/CELL** | E -05-11 | **Staff** | LOYD, BETTY J., Office Coordinator |

Emergency grievance #K4-0924-4383 dated 9/6/2024 regarding excessive/physical force/intimidations, camera footage, has been deemed emergency by CAO for expedited grievance review.

**Print Date 9/16/2024**

ILLINOIS DEPARTMENT OF CORRECTIONS
## RESPONSE TO INDIVIDUAL IN CUSTODY'S GRIEVANCE

| Grievance Officer's Report | | |
|---|---|---|
| Date Received: 09/09/2024 | Date of Review: 10/18/2024 | Grievance #: K4-0924-4383 |
| Individual in Custody Name: Johnson, Omar | | ID#: K74565 |

**Nature of Grievance:**

Excessive/Physical force/intimidations

**Facts Reviewed:**

Individual in Custody Johnson, Omar K74565 filed grievance K4-0924-4383 on 09/06/2024 and marked it as an emergency. The grievance office received this grievance on 9/09/2024 and sent this grievance to the Warden's office on the same day. The Warden's office received the grievance and marked it as emergency on 9/12/2024 and forwarded it back to the grievances office on the same day.

Individual in Custody Johnson is grieving that C/O Hart, Warden's Reichert & Wills, and LT Hanks for criminal stalking, intimidation and battery and excessive force and for failure to protect. He claims that he is in fear for his safety and suffer emotional distress due to their relevant actions.

Relief requested: Preserve video footage from 8/29/24, 3pm-3:20pm ECH 5-11, 8/30/24 5:15-5:35pm ECH 5-12: 8/30/24 5:40-5:55pm ECH 5-12, 9/2/24 9:52-9:54pm ECH 5-1. Keep Officer Hart, Officer Powell, LT Bennett and SGT Leposky away from me for our safety: Recommend Director issue emergency transfer.

Grievance office reviewed this grievance on 10/18/2024. Per the Internal Affairs department of Menard Johnson was interviewed 7/2/2024. Internal Affairs advised that they have an active case open pertaining to the events detailed in this grievance.

**Recommendation:**

It is the recommendation of this Grievance Officer that the Individual in Custody's grievance be RESOLVED, referred to active case with Internal Affairs for investigation

| | | |
|---|---|---|
| Anna Fitzgerald | | Anna Fitzgerald *Digitally signed by Anna Fitzgerald Date: 2024.10.18 07.21:41 -05'00'* |
| Print Grievance Officer's Name | | Grievance Officer's Signature |

(Attach a copy of Individual in Custody's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response | | |
|---|---|---|
| Date Received: 10/18/2024 | ■ I concur   ☐ I do not concur   ☐ Remand | |
| Action Taken: | | |
| Kevin Reichert | Digitally signed by Kevin Reichert Date: 2024.10.21 14:08:25 -05'00' | |
| | Chief Administrative Officer's Signature | Date |

| Individual in Custody's Appeal To The Director |
|---|
| I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must, within 30 days after the date of the Chief Administrative Officer's decision, be received by the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response if applicable, and any pertinent documents.) |

K74565     10-29-24

Individual in Custody's Signature     ID#     Date



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
prisoner.esl@ilsd.uscourts.gov

ELECTRONIC FILING COVER SHEET

Please complete this form and include it when submitting any type of document, letter, pleading, etc. to the U.S. District Court for the Southern District of Illinois for review and filing.

Johnson, Omor Ashanti
Name

K74565
ID Number

Please answer questions as thoroughly as possible and circle yes or no where indicated.

1.   Is this a new civil rights complaint or habeas corpus petition?          (Yes) or  No

     If this is a habeas case, please circle the related statute:   28 U.S.C.  2241 or 28 U.S.C. 2254

2.   Is this an Amended Complaint or an Amended Habeas Petition?      Yes or (No)

         If yes, please list case number:  _____

         If yes, but you do not know the case number mark here:     _____

3.   Should this document be filed in a pending case?          Yes or (No)

         If yes, please list case number:  _____

         If yes, but you do not know the case number mark here:     _____

4.   Please list the total number of pages being transmitted:          98

5.   If multiple documents, please identify each document and the number of pages for each document.  For example:  Motion to Proceed In Forma Pauperis, 6 pages;  Complaint, 28 pages.

| Name of Document | Number of Pages |
| --- | --- |
| Civil Rights Complaint | 98 |
|  |  |
|  |  |

Please note that discovery requests and responses are NOT to be filed, and should be forwarded to the attorney(s) of record.  Discovery materials sent to the Court will be returned unfiled.