## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

OMAR ASHANTI JOHNSON,

        **Plaintiff,**

v.

ZACHARY HART,
ZACHARY POWELL,
ANDREW BENNETT,
GARRETT LEPOSKY,
SANDY WALKER,
ANTHONY WILLS,
LIEUTENANT HANKS,
KEVIN REICHERT, and
JOHN DOE,

        **Defendant.**

Case No. 25-cv-00058-SPM

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Omar Ashanti Johnson, an inmate of the Illinois Department of Corrections (IDOC) who is currently incarcerated at Menard Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). The Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.

### THE COMPLAINT

In the Complaint, Plaintiff asserts that correctional officers and staff members at Menard Correctional Center (Menard) function as a gang. (Doc. 1, p. 9). He alleges that the gang engages in a system of unlawful, violent, and retaliatory punishment and torture against individuals in custody, especially those who are persons of color who say or do something that a gang member does not like. The gang members physically assault inmates, use chemical agents against inmates,

deprive inmates of food and water, place inmates in "torture cells," and issue false disciplinary reports. (*Id.*). Plaintiff points out that almost 100% of the "correctional-officer[s]/staff gang are 'white,' while over 95% of the gang's victims are people of color." (*Id.* at p. 17).

Plaintiff states that on May 22, 2024, Correctional Officers Andrew Bennett, Zachary Hart, Zachary Powell, and Garrett Leposky, who he describes as gang members, conspired to violate his civils rights because he is African American and because he "exercised his right to freedom of speech." (Doc. 1, p. 19). Bennett detained and restrained Plaintiff, after Plaintiff had complained about another officer interfering with his medical examination. (*Id.* at p. 17). Bennett turned Plaintiff over to Hart, Powell, Leposky, and others so that they would inflict physical and mental harm against Plaintiff and place him in torturous confinement. (*Id.*). Hart sexually harassed and humiliated Plaintiff, and then, he and Powell took Plaintiff to a "torture cell," cell N2-825, at Leposky's direction. (*Id.* at p. 12, 15, 16). Powell confiscated Plaintiff's asthma inhaler and served as a lookout while Hart "battered Plaintiff with blows," used pepper spray against Plaintiff, and strangled Plaintiff. (*Id.*).

Bennett and Hart both issued Plaintiff two false disciplinary reports based on the incidents of May 22, in order to prolong Plaintiff's tortuous confinement in segregation and to prevent Plaintiff from criminally prosecuting them for their actions. (*Id.* at p. 11, 12, 76, 79). Powell signed his name as a witness on the disciplinary report drafted by Hart. (*Id.* at p. 15).

On May 23, 2024, Bennett came by Plaintiff's cell in North Two and taunted Plaintiff. That same day, Hart denied Plaintiff dinner. (Doc. 1, p. 12).

Plaintiff had his disciplinary hearing on both disciplinary reports on March 28, 2024. (Doc. 1, p. 78, 80). The chairperson of the Adjustment Committee, Sandy Walker, recorded false information in the disciplinary hearing summary reports "in order to suppress Plaintiff's account"

of the events that took place on May 22 and 23, 2024. (*Id.* at p. 16). Walker also concealed the identity of witnesses. (*Id.* at p. 18). Without evidence, Walker still found Plaintiff guilty of the false charges brought by Hart, Bennett, and Powell. Plaintiff was sanctioned to 59 days of tortuous confinement in cell N2-425. (*Id.*).

On May 28, 2024, Sandy Walker notified Lieutenant Hanks about Plaintiff's allegations that "several criminal acts had been committed against him (Plaintiff) on May 22, 2024, and May 23, 2024." (Doc. 1, p. 24). Hanks did not conduct an investigation and "took steps to cover up [Defendants'] crimes," by concealing video evidence. On May 30, 2024, Plaintiff sent Hanks three letters (kites) about the May 22 events and the ongoing misconduct by Defendants. (*Id.* at p. 24-25). In response, Hanks had some of Plaintiff's outgoing mail confiscated and destroyed. (*Id.* at p. 25).

On May 31, 2024, Hart again denied Plaintiff dinner. (Doc. 1, p. 12). Hart and other correctional officers came to Plaintiff's cell and banged and rattled the cell door in order to intimidate Plaintiff. The correctional officers removed Plaintiff from the cell, and Hart went through Plaintiff's property. Hart found a complaint Plaintiff was writing about Hart and read the complaint. (*Id.*).

On June 7, 2025, Hart tampered with or made it appear that he tampered with Plaintiff's dinner. (Doc. 1, p. 12). Plaintiff did not eat dinner that evening out of fear the food had been contaminated in some way. (*Id.*).

On June 25, 2024, Hart denied Plaintiff his allotment of ice, which was required to be distributed because of the hot temperatures in the cells. (Doc. 1, p. 12).

On August 29, 2024, Hart told Plaintiff, "I own you." (Doc. 1, p. 13). On August 29, 2024, Hart told Plaintiff, "Snitches get stitches," knowing that Plaintiff was pursuing criminal charges

against him. (*Id.*).

On August 30, 2024, Plaintiff witnessed Hart spray another inmate with pepper spray after the inmate requested a crisis team and expressed experiencing suicidal thoughts. (Doc. 1, p. 13). After spraying the inmate, Hart asked Plaintiff, "You want to get sprayed in the eye again?" (*Id.*).

On September 2, 2024, Hart delivered to Plaintiff a memorandum from Warden Wills, dated July 23, 2024. (Doc. 1, p. 13-14). The memorandum was written to Plaintiff in response to a complaint Plaintiff had filed with the governor's office about Defendants' conduct. (*Id.* at p. 14). Hart told Plaintiff, "You still trying to snitch on me. Won't work." (*Id.*).

On November 21, 2024, while Plaintiff was being processed into the North 2, Hart told him, "You better hope you don't end up on my gallery." (Doc. 1, p. 14).

On December 26, 2024, Bennett stalked and harassed Plaintiff. (*Id.*).

Plaintiff claims that Warden Wills and Assistant Warden Reichert were informed through grievances of the mistreatment and threats he was receiving from staff, but they did nothing to address Plaintiff's concerns and ensure his safety. (Doc. 1, p. 21-24).

### PRELIMINARY DISMISSALS

Plaintiff brings claims for deprivation of his rights under 18 U.S.C. §§241 and 242. (Doc. 1, p. 26-28). Sections 241 and 242 are federal criminal analogues of 42 U.S.C. § 1983. *See Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989). A private citizen, however, cannot file a lawsuit under Title 18 of the United States Code, which governs crimes and criminal procedure, unless the particular section provides for a private cause of action. *See Maine v. Taylor*, 477 U.S. 131, 137 (1986) ("[P]rivate parties…have no legally cognizable interest in the prosecutorial decisions of the Federal Government."). Sections 241 and 242 do not provide for private causes of action. *See Pawelek v. Paramount Studios Corp.*, 571 F. Supp. 1082, 1083 (N.D. Ill. 1983) (It is "well settled

[that] no private right of action inheres in [18 U.S.C. §§ 241-42].”). Accordingly, Plaintiff cannot pursue any relief under 18 U.S.C. §§ 241 and 242. Claims brought under these statutes are dismissed.

Plaintiff states that he is bringing claims for unlawful restraint under Illinois tort law. Although not entirely clear, it appears that Plaintiff is claiming unlawful restraint based on his confinement in segregation. The Court is not aware of an Illinois tort for “unlawful restraint,” but under Illinois law, the civil claim of false imprisonment is defined as “the unlawful restraint of an individual's personal liberty.” *Gauger v. Hendle,* 954 N.E. 2d 307, 327 n. 6 (Ill. App. Ct. 2011). *See also Russell v. Kinney Contractors, Inc.,* 795 N.E. 2d 340, 347 (Ill. App. Ct. 2003). “A claim for false imprisonment requires a showing that the plaintiff was restrained or arrested by the defendant and that the defendant acted without having reasonable grounds or probable cause.” *Farwell v. Senior Servs. Assoc., Inc.,* 970 N.E. 2d 49, 54 (Ill. App. Ct. 2012). Plaintiff is not challenging his incarceration itself, and it is not “unlawful” or unreasonable under the elements of false imprisonment for staff of the Illinois Department of Corrections to transfer individuals within its custody to different institutions or more restrictive housing. *See Goings v. Jones,* No. 16-cv-00833-NJR-DGW, 2018 WL 2099877, at *5 (S.D. Ill. May 7, 2018) (dismissing under 1915A a state law false imprisonment claim); *Chandler v. Neal,* No. 25-cv-357-GSL-JEM, 2025 WL 1233967, at *1 (N.D. Ind. Apr. 29, 2025) (discussing Indian law, which is similar to Illinois false imprisonment, and noting “[a] claim of false imprisonment is not based on where one is imprisoned, it is based on the lawfulness of the restraint”). Thus, Plaintiff's allegations do not meet the elements of the common law tort, and his claims for false imprisonment/unlawful restraint under Illinois state law are dismissed. *See Lear v. Pfister,* No. 17-cv-1173-JBM, 2018 WL 10096601, at *2 (C.D. Ill. Feb. 1, 2018) (noting that “the Court could not find any Illinois cases

which reviewed a prisoner's segregation detention as a false imprisonment" and that such a claim is "precluded under Indiana state law").

Plaintiff's claims under Illinois state law for "correctional officer gang activity" are also dismissed. Under Illinois statute 740 ILCS 147/15, a civil cause of action may be brought against gang members and gang officers. 740 ILL. COMP. STAT. 147/15. However, such cause of action is "to be brought by the State's Attorney or attorneys, or by his or their designees." *Id.* Plaintiff does not qualify as any of these individuals, and so his civil claim for gang activity is dismissed.

The Court dismisses Plaintiff's claims for obstruction of justice under state tort law. Under Illinois law, obstruction of justice is a criminal offense. *See* 720 ILL. COMP. STATE. 5/31-4. The statute does not provide a private right of action; nor is the Court aware of "any case in which a private plaintiff was [found] to state a civil claim for obstruction of justice." *Hawk v. Perillo,* 642 F. Supp. 380, 385 (N.D. Ill. Oct. 31, 1985). Accordingly, Plaintiff's claims for obstruction of justice are dismissed.

Likewise, the Court dismisses Plaintiff's claims of stalking against Hart and intimidation against Hart and Leposky under Illinois state law. (Doc. 1, p. 27, 28). Again, the Court is not aware of a civil action for monetary damages under Illinois state law for intimidation or stalking. *See Mohammed v. Jenner & Block, LLP,* No. 21 cv 3261, 2022 WL 619851, at * (N.D. Ill. Mar. 2, 2022) (discussing stalking statutes in the Illinois Criminal Code, which do not authorize a civil right of action for stalking); 740 ILL. COMP. STAT. 21/80(d) ("Monetary damages are not recoverable as a remedy").

All claims against John Doe are dismissed, as there are no allegations against this individual in the Complaint.

DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

Count 1:      Eighth Amendment claim against Bennett, Hart, Powell, and Leposky for the use of excessive force and/or failing to intervene to prevent the use of excessive force against Plaintiff on May 22, 2024.

Count 2:      Eighth Amendment claim against Walker, Wills, Reichert, and Hanks for failing to protect Plaintiff from the use of excessive force on May 22, 2024.

Count 3:      First Amendment claim against Bennett, Hart, Powell, and Leposky for retaliating against Plaintiff.

Count 4:      Eighth Amendment claim for unconstitutional conditions of confinement against Leposky.

Count 5:      Eighth Amendment claim against Bennett and Hart for ongoing and continual harassment and mistreatment of Plaintiff and against Wills and Reichert for failing to protect Plaintiff from the ongoing harassment and mistreatment.

Count 6:      Fourteenth Amendment due process claim against Walker.

Count 7:      Fourteenth Amendment equal protection claim against Bennett, Hart, Powell, Leposky, Walker, Wills, Reichert, and Hanks.

Count 8:      Civil conspiracy claim in violation of Illinois state law against Bennett, Hart, Powell, and Leposky.

Count 9:      Battery claim in violation of Illinois state law against Hart.

Count 10:     Intentional infliction of emotional distress in violation of Illinois state law against Bennett, Hart, Powell, Leposky, Wills, and Reichert.

Count 11:     First Amendment free speech claim against Hanks for having Plaintiff's outgoing legal mail destroyed.

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the**

Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly[1]* pleading standard.

### Count 1

Plaintiff has sufficiently stated facts to proceed on an excessive force or in the alternative a failure to intervene claim against Defendants Bennett, Hart, Powell, and Leposky for the unconstitutional use of force against him on May 22, 2024. *See Hendrickson v. Cooper,* 589 F.3d 887, 890 (7th Cir. 2009) (the core inquiry is whether force was used not "in a good-faith effort to maintain or restore discipline" but "maliciously and sadistically to cause harm.").

### Count 2

Plaintiff states that he is bringing a "failure to protect claim" against Walker, Wills, Reichert, and Hanks. To state a claim for failure to protect, a plaintiff must allege facts from which a court could conclude that the plaintiff faces a substantial risk of serious harm, and that the defendants knew of and disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010).

There is nothing in the Complaint from which the Court can plausibly infer that Defendants Walker, Wills, Reicher, and Hanks where aware of an impending assault prior to the incident on May 22, 2024. According to the Complaint, Plaintiff notified Defendants of the use of excessive force after the event had occurred. Because they were not alerted to the assault until after the fact, they could not have known of the risk to Plaintiff's safety posed by the other defendants – Hart, Powell, Bennett, and Leposky – and then refused or failed to act.

In the Complaint, Plaintiff makes the claim that even before he arrived at Menard on December 28, 2023, Warden Wills and Assistant Warden Reichert had "knowingly authorized,

---

[1] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

condoned, consented, or acquiesced in a racially discriminatory system of punitive and retaliatory torture and violence against individuals of color in custody at Menard….by a correctional officer gang." (Doc. 1, p. 18, 22). This conclusory statement, however, is not support by any facts in the Complaint and cannot serve to state a claim for failure to protect. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Additionally, a defendant cannot be held liable simply because he or she oversees operations at the prison or supervised prison officers. *See Burks V. Raemisch,* 555 F. 3d 592, 594 (7th Cir. 2009).

Plaintiff also cannot pursue a failure to protect claim against Lieutenant Hanks because he failed to properly investigate the excessive force incident on May 22 and the taunting and denial of dinner that occurred on May 23. (*See* Doc. 1, p. 24-25). "[T]he Constitution does not require officials to investigate or otherwise correct wrongdoing after it has happened." *Garness v. Wis. Dep't of Corr.*, No. 15-cv-787-bbc, 2016 WL 426611, at *2 (W.D. Wis. Feb. 3, 2016) (citing *Whitlock v. Brueggemann*, 682 F.3d 567, 588-89 (7th Cir. 2012); *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). Thus, Plaintiff has failed to state a claim for failure to protect regarding the excessive force incident on May 22 against Wills, Walker, Reichert, and Hank. Count 2 is dismissed.

## Count 3

Plaintiff claims that Bennett, Hart, Powell, and Leposky retaliated against him for complaining about another officer's conduct during a medical exam by placing him in restrictive housing in "torturous conditions," using excessive force against him, and issuing him false disciplinary tickets. (Doc. 1, p. 11-15). These allegations are sufficient for Count 3 to proceed.

## Count 4

To establish a conditions of confinement claim, an inmate must establish (1) a deprivation

that is, from an objective standpoint, sufficiently serious that it results in the denial of the minimal civilized measure of life's necessities, and (2) where prison officials are deliberately indifferent to this state of affairs. *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (citing *Farmer*, 511 U.S. at 824). Conditions may be considered collectively when analyzing a conditions of confinement claim, and the duration of the allegedly harmful conditions is relevant to the existence of an Eighth Amendment violation. *Id.*

In the Complaint, Plaintiff identifies three different cells in which he was housed – N2-825, N2-403, N2-425. He describes them all as "torture cells" because of the small size and the amount of "time 'in-cell' (24/7)." (Doc. 1, p. 16, 17, 18). He, however, only describes the specific conditions of cell N2-403. Plaintiff asserts that Leposky ordered for Plaintiff to be placed in cell N2-403, where the linens and floor were soaked with urine. (*Id.* at p. 16). He also states that the cell N2-403 had "feces, flies, gnats, and with no light or ventilation." (*Id.*).

Count 4 will proceed against Leposky for placing Plaintiff in unsanitary conditions with no light or ventilation in cell N2-403. *See Vinning-El v. Long*, 482 F.3d 923, 923–24 (7th Cir. 2007). Any unconstitutional conditions of confinement claims Plaintiff intended to bring for his time spent in cells N2-825 and N2-425 are dismissed as inadequately pled.

## Count 5

After Plaintiff was placed in segregation, he alleges that Bennett and Hart engaged in ongoing harassing conduct towards him:

- On May 23, 2024, Bennett taunted him, and Hart denied him dinner;

- On May 31, 2024, Hart again denied him dinner, rattled his cell door, searched his cell, and read a complaint Plaintiff had drafted;

- On June 7, 2024, Hart tampered with or pretended to tamper with his food;

- On June 25, 2024, Hart did not give him his allotment of ice;

- On June 23, August 29, August 30, September 2, and November 21, 2024, Hart made verbal threats to Plaintiff; and

- Hart and Bennett "stalked/harassed" him.

At this stage, Plaintiff as sufficiently pled an Eighth Amendment violation against Hart and Bennett. *See Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015). The Court will also allow Count 5 to proceed against Defendants Wills and Reichert to the extent Plaintiff complained that Bennett and Hart had assaulted him, Bennett and Hart continued to threaten him with harm, and Wills and Reichert failed to protect Plaintiff from the ongoing imminent risk to his safety caused by Bennett and Hart.

### Count 6

Plaintiff has failed to state a claim for denial of procedural due process against Sandy Walker. Prisoners are not entitled to Fourteenth Amendment due process protections unless they can establish the deprivation of a constitutionally protected interest in life, liberty, or property. *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995) (per curiam). A court reviewing a due process claim engages in a two-part inquiry: (1) was there a protected interest at stake that necessitated the protections demanded by due process; and (2) was the disciplinary hearing process conducted in accordance with procedural due process requirements?

"Prisoners do not have a constitutional right to remain in the general population." *Isby v. Brown*, 856 F. 3d 508, 524 (7th Cir. 2017). *See also Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) ("an inmate's liberty interest in avoiding disciplinary segregation is limited") (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)). A protected liberty interest "is triggered only when the confinement imposes atypical and significant hardship on the

inmate in relation to the ordinary incidents of prison life." *Lisle v. Welborn*, 933 F.3d 705, 721 (7th Cir. 2019) (internal quotations and citations omitted). The key comparison when considering whether the conditions are significantly harsher "is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner v. Hanks*, 128 F. 3d 1173, 1175 (7th Cir. 1997). The Court also looks to the length of a prisoner's confinement in segregation in combination with the conditions he endured there. *See Kervin v. Barnes*, 787 F.3d 833, 836-37 (7th Cir. 2015).

Plaintiff asserts that Adjustment Committee Member Sandy Walker concealed evidence, recorded false information on the disciplinary hearing summary report, and found Plaintiff guilty of the conduct alleged in the disciplinary reports without any evidence. As a result, he was sentenced to 59 days in "torturous confinement in torture cell N2-425." (Doc. 1, p. 16, 18). These conditions, as pled, do not establish that Plaintiff was denied a liberty interest, and so due process was not required prior to placing him in segregation. *See Hardaway,* 734 F.3d at 744 (inmate not deprived of liberty interest when he spent 6 months in segregation behind a steel door with a confrontational cellmate and had only weekly access to shower and prison yard); *Thomas v. Ramos,* 130 F. 3d 754, 760-61 (7th Cir. 1997) (inmate not deprived of an liberty interest when he spent 70 days in a small segregation cell with a cellmate and was denied access to classes, the gym, a work assignment, and day room access); *McCoy v. Atherton,*818 F. App'x 538, 542 (7th Cir. 2020) (holding that 3 months in segregation in a dirty cell near physically and mentally ill inmates did not impose an atypical and significant hardship); *Obriecht v. Raemisch*, 565 F. App'x 535, 540 (7th Cir. 2014) (ruling that 78 days in "deplorable conditions" did not implicate a liberty interest, but that plaintiff might have challenged the conditions of confinement while in segregation) (citing *Marion*, 559 F.3d at 697-98). Accordingly, Count 6 is dismissed.

**Count 7**

Plaintiff alleges that he was subjected to various forms of mistreatment from the Defendants because he is African American, which is sufficient to survive preliminary review. *See Williams v. Dart*, 967 F.3d 625, 637 (7th Cir. 2020). Count 7 will proceed against Bennett, Hart, Powell, Leposky, Walker, Wills, Hanks, and Reichert.

**State Law Claims: Counts 8, 9, and 10[2]**

For a civil conspiracy claim, Illinois law requires a plaintiff to demonstrate: "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 509 (7th Cir. 2007) (citing *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999)).

Plaintiff claims that Bennett, Hart, Powell, at the direction of Leposky, placed him in poor living conditions and subjected to Plaintiff to excessive force. (Doc. 1, p. 15-16). This is sufficient for Count 8 to survive preliminary review.

Plaintiff's allegations of excessive force in Count 1 also support an Illinois state law claim for battery. *See, e.g.*, *Shea v. Winnebago Cty. Sheriff's Dep't*, 746 F. App'x 541, 548 (7th Cir. 2018) (discussing assault and battery under Illinois law). Count 9 will proceed against Defendant Hart. (*See* Doc. 1, p. 27).

Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that (1) the defendant "engaged in extreme and outrageous conduct;" 2) the defendant

---

[2] Plaintiff's state law claims arise under the same operative facts as his constitutional claims. Thus, the Court will exercise supplemental jurisdiction over the state law claims in Counts 8, 9, and 10. 28 U.S.C. § 1367(a); *Wisc. v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008).

either intended to inflict severe emotional distress "or knew there was a high probability that [his] conduct would cause severe emotional distress;" and 3) the defendant's "conduct in fact caused severe emotional distress." *McGreal v. Vill. Orland Park*, 850 F.3d 308, 315 (7th Cir. 2017) (internal quotations omitted).

Count 10 will proceed against Hart, Powell, Bennett, and Leposky for their involvement in the excessive force incident on May 22, 2024, and against Hart and Bennett for their ongoing harassment of Plaintiff. Count 10 will be dismissed, however, as to Wills and Reichert. The fact that Wills and Reichert have ignored or denied Plaintiff's grievances about his mistreatment does not amount to truly extreme and outrageous conduct.

### Count 11

The Seventh Circuit has held that "[t]he free-speech clause of the First Amendment applies to communications between an inmate and an outsider". *Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000). A First Amendment claim for mail interference requires an allegation that there has been "a continuing pattern or repeated occurrences" of denial or delay of mail delivery. *Id*. "[S]poradic and short-term" instances of mail mishandling or delays are not actionable under the First Amendment. *Id.*

Plaintiff claims that after he wrote to Lieutenant Hanks about the "May 22, 2024, incident and the ongoing activities of the criminal gang members," Hanks had mail Plaintiff sent to Director Latoya Hughes, the governor, Loevy & Loevy, and McArthur Justice Center destroyed. (Doc. 1, p. 25). This is sufficient for Count 11 to proceed against Hanks.

To the extent Plaintiff is attempting to bring a First Amendment claim for denial of access to courts because he characterizes the mail that was destroyed as "legal mail," such claim is dismissed, as he has not connected Hanks's conduct with his "inability to pursue a legitimate

challenge to a conviction, sentence, or prison conditions." *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted); *accord Guajardo Palma v. Martinson*, 622 F.3d 801, 805–06 (7th Cir. 2010). *See also Christopher v. Harbury,* 536 U.S. 403, 416 (2002) ("the underlying cause of action and its lost remedy must be addressed by allegations in the complaint"); *Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007).

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a motion asking the Court to recruit counsel on his behalf. (Doc. 5). Pursuant to 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." When faced with a motion for recruitment of counsel the Court applies a two part test: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Plaintiff has not provided any information regarding his efforts to find counsel on his own before seeking assistance from the Court. Thus, Plaintiff has failed to meet his threshold burden of making a "reasonable attempt" to secure counsel.   *See Santiago v. Walls*, 599 F.3d at 760. The motion is **DENIED.** Should Plaintiff choose to move for recruitment of counsel at a later date, the Court directs Plaintiff to include in the motion the names and address of at least three attorneys he has contacted, and if available, attach the letters from the attorneys who declined representation.

### MOTION FOR PRELIMINARY INJUNCTION AND/OR PROTECTIVE ORDER

Plaintiff has filed a motion seeking emergency injunctive relief. (Doc. 9). In the motion, Plaintiff alleges that on March 12, 2025, all his property, including "vital legal documents," where confiscated while he was at Cook County Jail on a court writ. He claims Defendants knew he had court deadlines approaching and a deposition with the Illinois Attorney General's Office on March 18, 2025. Plaintiff received access to his documents on March 17, only after he threatened

#166

Correctional Officers James, Birkner, and Chittie that he would make them subjects of his
deposition if they did not return his property. When he was escorted to retrieve his property,
Plaintiff was "chastised" for "threatening to discuss James's obstructive acts with the AG."

On March 27, 2025, Plaintiff was taken to the segregation building by Correctional Officer
Kulich. On his way, Plaintiff was led passed other officers "who mocked [Plaintiff]" by waiving
and saying "goodbye" and "have a nice day." Once at the segregation building, Plaintiff was
interviewed by Correctional Officers Doty and Ottenmeyer for allegedly yelling from his cell plans
to escape while he was on his court writ and encouraging other inmates to do the same. Plaintiff
denied that allegations. Without reviewing the surveillance footage, Plaintiff was placed under
investigative status and housed in the "torturous disciplinary segregation building."

While in segregation, Plaintiff asserts he has been subjected to mistreatment, including the
following:

- On April 1, 2025, he was informed by the property department that his television, that had
  worked when it was taken from him on March 27, was now broken.

- On April 2, 2025, his cell was subject to a "shakedown," and he was strip searched.

- He is not being given access to his legal documents and the law library, and he had a
  hearing on his post-conviction petition in state court on May 9, 2025.

- He is confined for twenty-four hours a day in a small cell with black mold, poor ventilation,
  and "dilapidated plumbing."

Plaintiff seeks a preliminary injunction or a temporary restraining order (TRO) directing his release
from segregation so that he can:

> Regain possession of, and prevent further destruction of, his property, so that he
> may not suffer irreparable mental deterioration, so that he can be transferred away
> from the sphere of influence of Menard's criminal correctional-officer gang
> administration, and relieved from its infliction of extra-state punitive pains.

Plaintiff argues that he will suffer irreparable injury if an injunction is not issued because his legal material may be destroyed and lost to him forever due to "Defendants' destructive acts of retaliation."

An emergency injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). In order to obtain a preliminary injunction or a TRO, the plaintiff has the burden of demonstrating:

- a reasonable likelihood of success on the merits;
- no adequate remedy at law; and
- irreparable harm absent the injunction.

*Planned Parenthood v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012). All three requirements must be satisfied before the Court can consider whether preliminary injunctive relief is warranted.

Plaintiff's motion will be denied, as he has failed the first requirement of demonstrating a reasonable likelihood of success on the merits of his claims. Plaintiff argues that he has demonstrated a likelihood of success on the merits of his claims of retaliation, civil conspiracy, denial of access to courts, false imprisonment, obstruction of justice, destruction of his property, and stalking, harassment, and intimidation. The Court finds this argument not well taken. First, Plaintiff cannot demonstrate a likelihood of success on his claims regarding false imprisonment, obstruction of justice, and stalking brought under Illinois state law because, as discussed above, these claims have been dismissed. Second, as for his assertion that he has a great likelihood of

success on the merits of his claims for destruction of his television, the withholding of his property, and the denial of access to courts, he is not proceeding with those claims in this case. Allegations that he is being denied access to his legal documents and the law library and that his physical property was confiscated were not asserted in the Complaint. They are therefore outside the scope of this lawsuit.

And finally, as for his retaliation, civil conspiracy, and harassment claims, Plaintiff does not explain how or why he will succeed on the merits of these claims. While Plaintiff is not required to "show that [he] definitely will win the case…a mere possibility of success is not enough," and he must make "[a] strong showing that [he] is likely to succeed on the merits." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). A "strong showing" includes a "demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). The Court found that Plaintiff sufficiently pled his claims to allow Plaintiff to proceed with retaliation and conspiracy claims against Defendants Hart, Powell, Bennett, and Leposky (Counts 1 and 8) and an Eighth Amendment claim based on harassing conduct in 2024 by Bennett, Hart, Wills, and Reichert (Count 5), but that does not mean he is likely to succeed on the merits of these claims. In assessing whether the motion for emergency injunctive relief has adequately demonstrated a reasonable likelihood of success on the merits, the Court does not simply "accept [Plaintiff's] allegations as true, nor do[es] [it] give him the benefit of all reasonable inferences in his favor." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the Court must assess the merits as "they are likely to be decided after more complete discovery and litigation." *Id.* Because Plaintiff only asserts new allegations of retaliatory conduct on the part of other correctional officers at Menard, and he has not addressed the threshold issue of how he is likely to succeed on the merits of his underlying case, the Motion for Preliminary

Injunction and/or Protective Order is **DENIED**. (Doc. 9).

## MOTION FOR STATUS

Plaintiff's motion for status is **DEEMED moot** in light of this Order. (Doc. 10).

## DISPOSITION

For the reasons set forth above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Bennett, Hart, Powell, and Leposky. **COUNT 2** is **DISMISSED**. **COUNT 3** will proceed against Bennett, Hart, Powell, and Leposky. **COUNT 4** will proceed in part against Leposky. **COUNT 5** will proceed against Bennett, Hart, Wills, and Reichert. **COUNT 6** is **DISMISSED**. **COUNT 7** will proceed against Bennett, Hart, Powell, Leposky, Walker, Wills, Reichert, and Hanks. **COUNT 8** will proceed against Bennett, Hart, Powell, and Leposky. **COUNT 9** will proceed against Hart. **COUNT 10** will proceed against Bennett, Hart, Powell, Leposky, Wills, and Reichert. **COUNT 11** will proceed against Hanks. Because there are no claims asserted against John Doe, this individual is dismissed, and the Clerk of Court is **DIRECTED** to terminate John Doe as a defendant on the docket.

The Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for Defendants Hart, Powell, Bennett, Leposky, Walker, Wills, Hanks, and Reichert the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court

will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, the Defendants need only to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 14, 2025**

*s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.