IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| OMAR ASHANTI JOHNSON,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>ZACHARY HART, *et al*,<br><br>　　　　　Defendants. | Case No. 25-cv-00058-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on motions filed by Plaintiff Johnson regarding his current conditions of confinement. He has file two motions asking the Court to "take judicial notice of Defendants' obstruction of justice" and an emergency motion for injunctive relief. (Doc. 29, 41, 43).

### I.　　Emergency Motion for Injunction/Temporary Restraining Order (Doc. 41)

In his motion seeking emergency injunctive relief, Plaintiff asserts that he was placed in segregation on December 2, 2025, because he made a call to the Illinois State Police the previous day, December 1, 2025, reporting verbal threats made against his life by Correctional Officer Justin Kulich. (Doc. 41, p. 8). Plaintiff was placed in cell N2-706 and later moved to cell N2-731. (*Id.* at p. 3). Although he was in segregation, he was able to keep possession of his tablet phone, and he continued to communicate with family and loved ones. (*Id.* at p. 8). He also communicated with prisoner advocates and news outlets, reporting to them the inhumane living conditions he was experiencing in segregation at Menard Correctional Center (Menard). (*Id.* at p. 8-9).

On December 12, 2025, Sergeant Williamson came and informed Plaintiff that he was

being moved to cell N2-806. (Doc. 41, p. 3). Plaintiff, who had moved cells two days prior, believed the purpose in moving him again was harassment. (*Id.*). Plaintiff informed Williamson that he did not consent to the move to a "torture cell" unless he could first speak with "Intel" or law enforcement. (*Id.*). Plaintiff defines "torture cell" as a "space of confinement intentionally designed or repurposed for the unlawful infliction of physical or psychological harm without penological or lawful purpose, but for retaliation, discrimination, or unlawful punishment." (Doc. 41, p. 2). Williamson called Lieutenant Roland. (*Id.* at p. 4). Plaintiff told Roland that he did not consent to being placed in a torture cell and that he first had to have Intel "secure the draft of [his] First Amended Complaint and its evidentiary exhibits." (*Id.*). Roland assured Plaintiff that Williamson would not touch his amended complaint and exhibits and that Correctional Officer Farrar would bring Plaintiff all of his documents to his new cell, N2-806. (*Id.* at p. 6).

Williamson and Correctional Officer Dillman then escorted Plaintiff to cell N2-806. (Doc. 41, p. 6). Plaintiff states that although N2-806 was not a torture cell, it was filthy and smelled like septic fumes. (*Id.*). The cell had trash, including shards of broken light bulbs, all over the floor and bunkbed. (*Id.*). The walls of the cell were covered in rust, dirt, and grime. (*Id.*). Plaintiff complained about the cell's condition to Roland. (*Id.*). Roland turned and walked away, leaving him with Dillman. (*Id.* at 5, 6). Dillman placed Plaintiff inside the cell and left. (*Id.* at p. 5).

Dillman returned to the cell a few minutes later with soiled blankets and informed Plaintiff that he did not have any other property for Plaintiff. (Doc. 41, p. 5). Plaintiff called Dillman a liar and stated that he had been told he would receive his legal documents, phone tablet, and other property. (*Id.*). Dillman then told that he would kill Plaintiff and called Plaintiff a racial slur. (*Id.*).

After shift change, Plaintiff asked Correctional Officer Korando for grievance forms. (Doc. 41, p. 7). Korando told Plaintiff, "We don't have any." (*Id.*). Plaintiff also told Korando that he needed to speak to a lieutenant because Dillman had threatened to kill him. (*Id.*). Korando

responded, "Somebody ought to." (*Id.*).

Because Plaintiff was not receiving any help regarding the threats to his life and the condition of the cell, he barricaded himself in cell N2-806 by "tying the door to the bunk to make it difficult to open in case" a correctional officer came in the night to harm him. (*Id.* at p. 7-8). Plaintiff asserts that he informed staff members, "I am afraid for my life, and I am peacefully seeking refuge in this cell until I speak to Internal Affairs or law enforcement," and "I don't intend to harm myself nor anyone else." (*Id.* at p. 10). Despite these communications, he was forcibly extracted from cell N2-806. (*Id.*). Tactical officers came to his cell, and, after they were unable to open the door, they sprayed a cannister of oleoresin capsicum into the cell. (*Id.* at p. 11). Several more cannisters of oleoresin capsicum were sprayed into the cell, even though Plaintiff had informed the officers he was asthmatic. (*Id.*). Excessive force was used against Plaintiff by Correctional Officer Maldonado, and Plaintiff was taken to cell N2-219. (*Id.* at p. 12).

Plaintiff states that after being placed in cell N2 -219 the water to the cell was disabled, and he was unable to clean the oleoresin capsicum spray from his body. (Doc. 41, p. 2). His skin, eyes, and entire body burned. (*Id.* at p. 1). Plaintiff describes the cell as "a frigid torture cell." (*Id.*). He has not been given sheets, blankets, underwear, or socks, and so is unable to keep warm. (*Id.* at p. 2). The cell is filthy, and he has not been given any hygiene products. (*Id.*). And finally, Plaintiff asserts that he is lactose intolerant and is only being given milk to drink. (*Id.* at p. 3). Plaintiff states that he is afraid for his life. He asks to be removed from Menard and granted access to his legal documents and to the phone. (*Id.* at p. 14). He also asks the Court to enjoin Defendants and Menard staff from keeping him in segregation and continuing to violate his Eighth Amendment rights. (*Id.*).

An emergency injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v.*

*Armstrong*, 520 U.S. 968, 972 (1997). To obtain a preliminary injunctive relief or a temporary restraining order (TRO), a plaintiff must demonstrate that: (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm without the injunction. *Meritte v. Kessel, 561 F. App'x* 546, 548 (7th Cir. 2014); *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007). All three requirements must be satisfied before a court can consider whether injunctive relief is warranted. Furthermore, "a preliminary injunction is appropriate only if it seeks relief of the same character sought in the underlying suit, and deals with a matter presented in that underlying suit." *Daniels v. Dumsdorff,* No. 19-cv-00394, 2019 WL 3322344 at *1 (S.D. Ill. July 24, 2019) (quoting *Hallows v. Madison Cty. Jail*, No. 18-cv-881-JPG, 2018 WL 2118082, at *6 (S.D. Ill. May 8, 2018) (internal citations omitted)). *See also Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *Bird v. Barr,* 19-cv-1581 (KBJ), 2020 WL 4219784, at *2 (D.C. Cir. July 23, 2020) (noting that a court "only possesses the power to afford preliminary injunctive relief that is related to the claims at issue in the litigation").

Here, Plaintiff seeks emergency injunctive relief solely based on new allegations that do not pertain to the constitutional violations alleged in the Complaint, and thus, it is impossible for him to show a likelihood of success on the merits of these new claims. His allegations of harassment, retaliation, threats, excessive force, and unconstitutional conditions of confinement that recently occurred in December 2025 are not the subject of this case, which focuses on events that transpired in 2024, specifically a conspiracy to violate his constitutional rights by placing him in poor living conditions and subjecting him to excessive force and harassment, failure to protect him from the alleged mistreatment, and racial discrimination. Additionally, the allegations in the motion are against individuals who are not parties. Plaintiff identifies these individuals as "newly-added defendants," but a motion for a TRO or preliminary injunction is not a proper avenue for Plaintiff to add claims and individuals to this lawsuit.

Plaintiff attempts to link the new allegations in the motion to the facts asserted in the Complaint by stating that events of December 2025 were perpetrated by co-members of a correctional officer gang of which Defendants are members. While there are commonalities between the poor treatment in 2024 and what he is currently experiencing, Plaintiff has not claimed or put forth any evidence that he is in imminent harm due to Defendants' actions, and the new assertions against nonparties cannot provide the basis for an emergency injunction in this lawsuit. *See Devose*, 42 F. 3d at 471. If Plaintiff wishes to pursue emergency injunctive relief for the new constitutional deprivations he is experiencing, Plaintiff will need to file another lawsuit. The Court states no opinion on the merits of any such claims. For these reasons, the motion for a TRO and preliminary injunction is **DENIED.** (Doc. 41).

II.     **Motions for the Court to Take Judicial Notice (Doc. 29, 43)**

On August 11, 2025, the Court received a motion from Plaintiff asking the Court to take notice of additional assertions regarding his conditions of confinement at Menard. (Doc. 29). He states that on March 27, 2025, co-members of the correctional officer gang confiscated his legal documents and "falsely imprisoned" him in the "hazardous, inhuman, and torturous segregation building." (*Id.* at p. 2). Plaintiff argues that Defendants harass and abuse him because he is "a proud and relentless agitator for humane treatment and conditions of confinement and for restorative justice." (*Id.*). He informs that Court that being placed in segregation makes it impossible for him to prosecute his claims in this case. (*Id.*).

On December 29, 2025, Plaintiff filed a second motion asking the Court to take notice of additional assertions regarding his conditions of confinement at Menard. (Doc. 43). Plaintiff states that Defendants are actively obstructing his ability to file his First Amended Complaint. (*Id.* at p. 1). Plaintiff states that he is still in segregation, housed in an unsanitary torture cell N2-219, and separated from his property, including legal documents needed to draft an amended complaint. (*Id.*

at p. 1-2). He asks the Court to take notice that he is being tortured without access to his legal documents. Plaintiff also asks the Court for another extension on the deadline to amend his Complaint. (*Id.*).

To the extent Plaintiff is seeking to add factual allegations to the Complaint and/or this lawsuit, the motions for the Court to take judicial notice are **DENIED**. The Court does not allow piecemeal amendments or supplements to the Complaint. Plaintiff is advised that an amended complaint is a single document that must stand on its own without reference to any other pleading and include all claims against all defendants and his requested relief. Plaintiff should refrain from filing supplemental documents that are unsolicited, seek only to provide notice and information, and do not seek any relief from the Court.

To the extent Plaintiff is seeking additional time to file an amended complaint, the motions are **GRANTED**. Plaintiff shall have until **February 8, 2026,** to file a motion for leave to amend the complaint, along with the proposed amended complaint. In the meantime, Defendants are **DIRECTED** to respond on or before **January 22, 2026,** to Plaintiff's allegations (1) that his First Amended Complaint, already drafted, was confiscated from him before he was able to file it with the Court; and (2) that he is being denied access to his legal documents, which inhibits his ability to draft a new First Amended Complaint.

### III.   Defendants' Motions (Doc. 42, 44)

The motion to stay the issue of exhaustion filed by Defendants is **GRANTED**. (Doc. 42). The dispositive motion deadline regarding exhaustion of administrative remedies is **STAYED** and will be reset once Plaintiff has had an opportunity to file a motion for leave to amend his complaint and the Court has ruled on the motion.

The motion for extension of time is **DENIED in part and GRANTED in part**. (Doc. 44). As stated above, Defendants shall have until January 22, 2026, to respond to Plaintiff's allegations

regarding confiscation and access to his legal documents. Plaintiff's request for emergency injunctive relief is denied, and therefore the request for more to respond is denied as moot.

**IT IS SO ORDERED.**

**DATED:   January 8, 2026**

                                              _s/Stephen P. McGlynn_
                                              **STEPHEN P. MCGLYNN**
                                              **United States District Judge**