IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| OMAR ASHANTI JOHNSON,<br><br>           Plaintiff,<br><br>v.<br><br>ZACHARY HART, *et al.*,<br><br>           Defendants. | Case No. 25-cv-00058-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court for case management purposes. Plaintiff has filed a Motion to Appoint Counsel, a Motion for the Court to Take Judicial Notice of Defense Counsel's Co-Conspiracy with Defendants to Obstruct Prosecution, and a Third Motion for Extension of Time to File a First Amended Complaint. (Docs. 51, 52, 55). He also continues to allege that he is being impeded from litigating this case by staff at Menard Correctional Center (Menard).

### BACKGROUND

Plaintiff initiated this lawsuit on January 15, 2025. (Doc. 1). In the Complaint, he asserts that in 2024, he was assaulted by Correctional Officers Bennett, Hart, Powell, and Leposky and issued false disciplinary reports in retaliation for complaining about another officer's conduct. He was found guilty of the disciplinary reports and placed in "tortuous" conditions in segregation for fifty-nine days. During his time in and following his release from segregation, Bennett and Hart harassed him. Plaintiff asserts that Defendants mistreated him because he is African American. Following preliminary review of the Complaint pursuant to Section 1915A, Plaintiff is proceeding on the following claims (*see* Doc. 11):

**Count 1:** Eighth Amendment claim against Bennett, Hart, Powell, and Leposky for the use of excessive force and/or failing to intervene to prevent the use of excessive force against Plaintiff on May 22, 2024.

**Count 3:** First Amendment claim against Bennett, Hart, Powell, and Leposky for retaliating against Plaintiff.

**Count 4:** Eighth Amendment claim for unconstitutional conditions of confinement against Leposky for the period of time Plaintiff was held in cell N2-403.[1]

**Count 5:** Eighth Amendment claim against Bennett and Hart for ongoing and continual harassment and mistreatment of Plaintiff and against Wills and Reichert for failing to protect Plaintiff from the ongoing harassment and mistreatment.

**Count 7:** Fourteenth Amendment equal protection claim against Bennett, Hart, Powell, Leposky, Walker, Wills, Reichert, and Hanks.

**Count 8:** Civil conspiracy claim in violation of Illinois state law against Bennett, Hart, Powell, and Leposky.

**Count 9:** Battery claim in violation of Illinois state law against Hart.

**Count 10:** Intentional infliction of emotional distress in violation of Illinois state law against Bennett, Hart, Powell, and Leposky.[2]

**Count 11:** First Amendment free speech claim against Hanks for having Plaintiff's outgoing legal mail destroyed.

Since April 15, 2025, when Plaintiff filed his first motion seeking a preliminary injunction, he has continuously contended that he is being subjected to ongoing unconstitutional treatment at Menard, and his ability to litigate this civil suit is being impeded.

In the first Motion for Preliminary Injunction, Plaintiff alleged that on March 27, 2025, he was placed in disciplinary segregation on "investigation status" under "tortious" conditions. (Doc.

---

[1] The Court dismissed Count 4 to the extent Plaintiff was alleging he was held in unconstitutional conditions of confinement for his time spent in cells N2-825 and N2-425. (Doc. 11, p. 10).

[2] The Court dismissed Count 10 as to Wills and Reichert. (Doc. 11, p. 14). However, on page 19 of the Merits Review Order the Court incorrectly stated that Count 10 was proceeding against Wills and Reichert. (*Id.* at p. 19). The Court **CLARIFIES** that Count 10 is only proceeding against Bennett, Hart, Powell, and Leposky and is dismissed without prejudice as to Wills and Reichert.

9, p. 8). In segregation, he was separated from his property including legal documents. (*Id.*). On April 1, 2025, he received notice from the personal property department that his television, which had been working when it was taken from him at the time he was placed in segregation, was now broken. (*Id.* at p. 10). He was informed that he would have to pay to have it repaired. (*Id.* at p. 11). On April 2, 2025, Plaintiff was removed from his cell so that his cell could be searched. (*Id.* at p. 9). During the search ("shakedown"), he was restrained and taken to N2 visiting room and subjected to a strip search. (*Id.* at p. 10). When he returned to his cell, he noticed that nothing in the cell had been disturbed, and a shakedown had not actually occurred. (*Id.*). Plaintiff states that this incident, the fabricated shakedown and corresponding strip search, occurred only to harass him. (*Id.*). In the Motion for Preliminary Injunction, he explained that he had an upcoming hearing in Cook County scheduled for May 9, 2025, on his post-conviction petition, but because he was in segregation, he was unable to access the law library to conduct research and properly prepare before the hearing. (*Id.* at p. 11).

The Court denied the Motion for Preliminary Injunction. (Doc. 11, p. 15-19). The Court observed that Plaintiff only asserted new allegations of retaliatory conduct on the part of correctional officers at Menard and did not address how he was likely to succeed on the merits of his underlying case. (*Id.*).

On August 11, 2025, Plaintiff then filed a motion asking the Court to take notice of Defendants' obstruction of justice. (Doc. 29). He alleged that he again had been placed in segregation in hazardous and inhuman conditions. (*Id.* at p. 29). He stated that his legal property was confiscated, and he was unable to amend the Complaint because Defendants had his legal documents in their possession, including the operative Complaint. (*Id.* at p. 2). He also asserted that he was being denied access to the telephone, he was being prevented from sending emails,

and his outgoing mail was being destroyed. (*Id.* at p. 3).

On December 3, 2025, Plaintiff sought an extension of the deadline to file an amended complaint. (Doc. 39). In the motion, Plaintiff stated that he was in segregation and again did not have access to any of his property, including all his legal work and documents relating to this case. (*Id.* at p. 1). Without these documents, he contended that he could not "prepare the motion for leave or the amended complaint." (*Id.*). The Court granted the Motion for Extension of Time, and Plaintiff had until December 29, 2025, to file an amended complaint. (Doc. 40).

Plaintiff filed his second motion seeking a preliminary injunction on December 15, 2025. (Doc. 41). In the motion, Plaintiff alleged that he was placed in segregation again on December 2, 2025. (*Id.* at p. 8). For the first few days in segregation, Plaintiff was able to keep possession of his tablet phone and continued to communicate with family and loved ones. (*Id.*). On December 12, 2025, Plaintiff was moved to cell N2-219, which he described as a torture cell. (*Id.* at p. 1-2). He stated that his tablet phone, drafted First Amended Complaint, and other legal documents, such as an affidavit containing the signatures of over one hundred and eighty-five inmates who were either victims or witnesses to unlawful activity perpetrated by Menard staff, were confiscated when he was forced to transfer to cell N2-219. (*Id.* at p. 4, 9, 13). Plaintiff asked the Court to enter an injunction ordering Menard staff to (1) refrain from placing him in segregation and confiscating his tablet phone; (2) return his "Complaint, its exhibits, and all other legal documents;" and (3) remove him immediately from cell N2-219. (*Id.* at p. 14). He also requested a court order transferring him from Menard. (*Id.*).

On December 29, 2025, Plaintiff filed a second motion asking the Court to take notice of Defendants' obstruction of justice. (Doc. 43). Plaintiff asserted that as of filing the motion, he was still separated from his property, including relevant legal documents, and housed in segregation.

(*Id.* at p. 2). He contended that if the Court did not compel the Defendants to restore his legal documents to him, he would not be able to file an amended complaint. (*Id.*). He asked the Court to take notice that he was still being intentionally tortured without access to his legal documents and to grant him another extension to file an amended complaint. (*Id.*). Attached to the motion is an affidavit and a list of signatures from over one hundred inmates. (*Id.* at p. 3-11).

The Court addressed the Motions for the Court to Take Judicial Notice (Docs. 29, 43) and the second Motion for Preliminary Injunction (Doc. 41) in an Order issued on January 8, 2026. (Doc. 45). The Court found that Plaintiff was seeking emergency injunctive relief solely based on new allegations that did not pertain to the constitutional violations alleged in the Complaint, and so again, he failed to demonstrate a likelihood of success on the merits of the claims in this case. (*Id.* at p. 4). As to Plaintiff's Motions for the Court to Take Judicial Notice, the Court ruled that to the extent he was attempting to add factual allegations to the Complaint, his motion was denied. (*Id.* at p. 5-6). The Court, however, granted Plaintiff another extension to file his amended complaint and set the deadline for February 8, 2026. (*Id.* at p. 6). Defendants were directed to respond to Plaintiff's assertions that his First Amended Complaint, already drafted, had been confiscated from him before he was able to file it with the Court and that he was being denied access to his legal documents, which hindered his ability to draft a new amended complaint. (*Id.*).

Defendants filed their response, and Plaintiff filed a Motion to Appoint Counsel, a Motion for the Court to Take Judicial Notice of Defense Counsel's Co-Conspiracy with Defendants to Obstruct Prosecution, and a Third motion for Extension of Time to File a First Amended Complaint. (Docs. 49, 51, 52, 55). These motions are currently before the Court.

### Motion for the Court to Take Judicial Notice of Defense Counsel's Co-Conspiracy with Defendants to Obstruct Prosecution

Plaintiff has filed a motion asking the Court to take judicial notice that Defense Counsel has "conspiratorial knowledge of his clients' alleged obstruction of justice in this cause and to compel [Defense] Counsel to serve Plaintiff a copy of Defendants' response to his second Motion for Preliminary Injunction at Doc. 49. (Doc. 52, p. 8). Defendants filed a response in opposition to the motion, and Plaintiff filed a reply brief. (Docs. 54, 56).

Based on the briefing, the Motion for the Court to Take Judicial Notice is **DENIED.** (Doc. 52). According to Plaintiff, he received a copy of Defendants' response to his second Motion for Preliminary Injunction filed at Doc. 49 on January 29, 2026. (*See* Doc. 53, p. 2). Because he has received the response, there is nothing to compel. Additionally, the Court finds nothing conspiratorial or nefarious in Plaintiff receiving Defendants' response only ten days after it was electronically filed with the Court. Pursuant to General Order No: 18-0014, Defendants mail to the prisoner, via the United States Postal service, a copy of any document they file with the Court. Library staff will print the corresponding NEF for documents filed by Defendants but will not print the full document. Due to circumstances outside the Court's control, mail sent by the United States Postal Service often takes longer than expected to deliver. There is no evidence that Defense Counsel "failed to serve Plaintiff" a copy of the response, and the request to compel is denied.

Plaintiff's contention that Defense Counsel has acted in concert with Menard staff in obstructing him from litigating this case is also not well taken. (Doc. 52, p. 1- 7). Plaintiff bases this belief on the fact that Defense Counsel referenced an affidavit which included numerous inmate signatures in Defendants' Motion for Extension of Time. (*See* Doc. 44). Plaintiff asserts that this document, the affidavit with inmate signatures, was included with the legal documents confiscated from him on December 12, 2025, and is not public record. Therefore, Plaintiff argues

that the only way Defense Counsel would have been aware of this document is if he had seen the confiscated legal documents, which are in the possession of Menard staff, or discussed the confiscated documents with Defendants. (Doc. 52, p. 4). But as Defense Counsel points out, Plaintiff filed this document on the record on December 29, 2025, along with his second Motion for the Court to Take Judicial Notice. (*See* Doc. 43, p. 3-11). In his reply brief, Plaintiff confirms that Defense Counsel is correct that the affidavit and signatures were filed on the docket, but he asserts that he did not file it with the Court. (Doc. 56). Plaintiff states that when filing the second Motion for the Court to Take Judicial Notice, he only sent the two-page Motion to be electronically filed to the Court, which did not include the affidavit and attached inmate signatures. (*Id.* at p. 2). He contends that he does not know how the affidavit came to be included with the Motion. (*Id.*). Plaintiff believes the affidavit was attached by someone trying to undermine his continuing assertions that his legal documents have been confiscated from him or to support an argument made by Defense Counsel. (*Id.* at p. 4). Regardless of how the affidavit came to be included in the public record, there is no evidence that Defense Counsel has engaged in any acts of bad faith or wrongdoing. For these reasons, the Motion for the Court to Take Judicial notice of Defense Counsel's Co-Conspiracy with Defendants is **DENIED.** (Doc. 52).

### THIRD MOTION FOR EXTENSION OF TIME TO FILE A FIRST AMENDED COMPLAINT

Plaintiff seeks a third extension of time to file an amended complaint. (Doc. 55; *see also* Doc. 53). Plaintiff asserts that on December 12, 2025, his drafted First Amended Complaint was confiscated before he could file it, and he "has been stripped of the legal documents, notes, and exhibits he needs to adequately prepare [a new] amended complaint." (Doc. 55, p. 1). The documents needed include "notes of relevant, dates, locations, and actors of alleged conduct which will state Plaintiff's claim; dates that defendants were notified making them liable, etc.; affidavits

of similarly victimized individuals (for potential class status), etc." (*Id.* at p. 2). Plaintiff states that under normal segregation procedure, his in-cell property should have been delivered to him after he was placed in segregation, but he has only been given "No. 10 envelope box containing some irrelevant/outdated correspondences (letters), a hat, and a fan since 12/2/25." (*Id.* at p. 3).

In response to Plaintiff's second Motion for Preliminary Injunction, Defendants have provided the declaration of Property Officer Ryan Chandler. (Doc. 49-2). Chandler attests that in order for an individual to review excess legal paperwork, the individual must submit a written request by placing it in the request box. (Doc. 49-2, p. 1). According to Chandler, Plaintiff's excess legal paperwork is not being withheld by Menard staff. Plaintiff has not received access to this excess legal paperwork because he has not followed procedure and submitted a request. (*Id.* at p. 2). Chandler states that any items not in Plaintiff's excess legal paperwork are in Plaintiff's custody. (*Id.*).

Plaintiff argues that Chandler's reference to excess legal paperwork is a distraction. (Doc. 53, p. 8). He does not refute that he has not requested access to his excess legal paperwork. Rather, Plaintiff states he has "no need for excess legal paperwork," as the documents in his excess legal paperwork are not related to this case. (*Id.*). Plaintiff asserts that Defendants have illegally confiscated his First Amended Complaint and related documents. He argues the contention between the parties is about "what happened at cell N2-731" on December 12, 2025. (*Id.*).

Plaintiff's framing of the issue before the Court is incorrect. The Court has denied Plaintiff's Motion for Preliminary Injunction based on the events of December 12, 2025, and these allegations are not a part of this lawsuit. As he was advised, he cannot add claims and parties to this case by filing motions for preliminary injunctions. (*See* Doc. 45, p. 4-5). The motion before the Court is the Third Motion for Extension of Time to File a First Amended Complaint. (Doc.

55). The standard for extending a deadline is whether or not the Court finds "good cause." FED. R. CIV. P. 6(b)(1).

The Court will assume that Plaintiff's drafted First Amended Complaint and relevant legal documents were taken from him when he transferred cells on December 12, 2025. Other than speculation, however, Plaintiff has not offered any evidence supporting his belief that his First Amended Complaint and relevant legal documents are not being stored with his excess legal paperwork. Plaintiff's contention appears to be that his First Amended Complaint and relevant legal documents should have been given to him in accordance with segregation procedure as they were a part of his "regular (in-cell) property" at the time he was placed in cell N2-219 on December 12, 2025, and because they were not, they are being improperly withheld or were discarded by Defendants. (*See* Doc. 55, p. 3). Plaintiff, however, has not submitted a request to view his excess legal paperwork, and so he cannot refute Defendants' assertion that any legal documents that are not in his possession are being stored with his excess legal paperwork, which would include the First Amended Complaint and relevant documents. Thus, the Court has no reason to believe that he is being prevented from filing an amended complaint because his documents were confiscated on December 12, 2025, when he transferred cells.

The Court further notes that Plaintiff's assertions in his recent filings regarding when he had access to legal documents and an ability to draft an amended complaint are inconsistent with previous statements made to the Court. In his first Motion for the Court to Take Judicial Notice filed on August 11, 2025, Plaintiff stated that he would be unable to amend his Complaint "because the defendants have all of his legal documents, including his Complaint in this case." (Doc. 29, p. 2). Similarly, in his first Motion for Extension of Time to File a First Amended Complaint signed November 27, 2025, and received by the Court on December 3, 2025, he asserted that he was again

in segregation with no access to any of his property, including all of his legal work and documents relating to this case, and could not realistically prepare a motion for leave or the amended complaint. (Doc. 39, p. 1). In the Motion for Extension of Time, Plaintiff did not specify when he had initially been placed in segregation or how long he had been in segregation, and so construing Plaintiff's filing liberally, the Court granted the motion. (Doc. 40).

In his second Motion for Preliminary Injunction filed on December 15, 2025, he asserts that he was in fact able to draft the First Amended Complaint while in segregation cell N2-731, where he was housed from December 10 through December 12, 2025. (Doc. 41, p. 3, 4, 9). He also specifies that he was placed in segregation on December 2, 2025. (*Id.* at p. 8).

In Plaintiff's reply to Defendants' response to his second Motion for Preliminary Injunction, however, he asserts that since the confiscation of his property on March 27, 2025, he has "been reunited with his property until 12/2/25 (when he was separated from the property in his general population cell N2-307) and 12/12/25 (when his FAC/materials related were confiscated)" (Doc. 53, p. 7). He states that he began drafting the First Amended Complaint after the Initial Scheduling Order was entered on September 29, 2025. (*Id.*). Given these discrepancies, it is now unclear why Plaintiff was unable to meet the initial deadline of November 28, 2025, to file the First Amended Complaint.

The Court further notes that the confiscation of his legal documents on December 12, 2025, did not prevent him from filing an amended complaint in his other civil case being litigated in this district. In *Johnson v. Hughes,* Plaintiff's complaint was dismissed without prejudice, and he was given until December 9, 2025, to file an amended complaint, Case No. 25-00702-SMY, Doc. 11 (S.D. Ill. Nov. 10, 2025). On December 8, 2025, Plaintiff filed a motion seeking an extension of the deadline because he had been placed in segregation without access to any of his property,

"including all of his legal work and documents relating to this matter." *Id.* at Doc. 12. Despite not being given any legal documents, except "irrelevant/outdated correspondences," (*see* Doc. 55, p. 3), Plaintiff was able to draft and file an amended complaint, complete with exhibits, in *Johnson v. Hughes,* on January 16, 2026. *Johnson v. Hughes,* Doc. 14.

Plaintiff has been given four months to draft and file an amended pleading and has failed to do so. As Plaintiff is aware, a successful amended complaint only requires a brief statement on when, where, how, and by whom he felt his constitutional rights were violated. (Doc. 1, p. 9). *See also Johnson v. Hughes,* Docs 1, 11, 14. The Court does not doubt that he has experienced the difficulties that many incarcerated pro se litigants face in attempting to amend his pleadings, but based on his recent filings, it is no longer clear why he was unable to meet the original November 28, 2025 deadline, and assuming his First Amended Complaint and relevant documents were confiscated on December 12, 2025, he has not shown that he is being denied access to legal property and inhibited from drafting and filing a new amended complaint. Accordingly, the Court does not find good cause to grant Plaintiff any further extensions, and his third Motion for Extension of Time to File a First Amended Complaint is **DENIED.** (Doc. 55).

As the deadline for Plaintiff to file an amended complaint has expired, and his request to extend the deadline has been denied, Defendants' dispositive motions regarding exhaustion are due on or before **March 23, 2026.** (*See* Doc. 45).

## MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff has filed a second Motion for Recruitment of Counsel (Doc. 51), which is **DENIED.**[3] In denying Plaintiff's first motion seeking court recruited counsel, the Court found that Plaintiff had failed to demonstrate that he had made a reasonable attempt to obtain counsel

---

[3] In evaluating the Motion for Recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

prior to seeking assistance from the Court. (Doc. 11, p. 15). Plaintiff was instructed that if he were to refile his motion then he should include in the motion the names and addresses of at least three attorneys he has contacted, and if available, attach the letters from the attorneys who declined representation. (*Id.*). Plaintiff again has not provided any information regarding his efforts to locate a lawyer himself. It appears that he is asserting that he is effectively precluded from doing so because he has been completely cut off from communications with the outside world.

To the extent that Plaintiff is being prevented from obtaining a lawyer, the Court still finds that he is capable of representing himself at this early stage. Plaintiff contends that he cannot proceed pro se because he does not have access to relevant legal documents, and he has been completely cut off from outside communications. (Doc. 51, p. 2). He argues that he continues to be housed in torturous conditions and harassed by staff, and he needs someone to represent him who is free "from the power and control of Defendants' plenary-obstructive abilities." (*Id.* at p. 3). Plaintiff further states that he is forced to borrow pens and paper from other suffering inmates in segregation. (*Id.*).

Despite these obstacles, Plaintiff continues to be a zealous advocate for himself. Since his placement in segregation in December 2025, and with limited access to pens and paper, he has filed six motions, a notice of change of address, and two reply briefs, a total of seventy-six pages with the Court. (Docs. 39, 41, 43, 50, 51, 52, 53, 55, 56). Plaintiff's filings are clearly written and organized and demonstrate his ability to articulate his arguments and communicate with the Court and Defendants. Merits discovery is currently stayed until the issue of exhaustion has been resolved, and the Court finds that Plaintiff will be able to respond to the issue of whether he properly utilized the administrative grievance process prior to initiating this lawsuit. Whether Plaintiff exhausted is usually a straight-forward argument that does not require the need for counsel

or extensive legal research. The issue of exhaustion hinges on facts available to Plaintiff, specifically, if and when he filed grievances and appeals for his claim. For these reasons, the complexity of this case has not exceeded Plaintiff's abilities.

To the extent Plaintiff asserts that he is currently experiencing violations of his constitutional rights, Plaintiff is reminded that he must pursue those claims in a new lawsuit.

**IT IS SO ORDERED.**

**DATED: March 2, 2026**

                                                                                   *s/Stephen P. McGlynn*
                                                          **STEPHEN P. MCGLYNN**
                                                          **United States District Judge**